FRED ZADERAKA, Petitioner-Appellant, v. THE HUMAN RIGHTS COM-
MISSION *et al.*, Respondents-Appellees.

Third District   No. 3—87—0589

Opinion filed July 1, 1988.—Rehearing denied August 5, 1988.

BARRY, J., dissenting.

Jackson, Mitchell & Collier, of Peoria (Donald R. Jackson, of counsel),
for appellant.

Gould & Rather, of Chicago (Kathryn S. Mueller, of counsel), for appel-
lee Freeman United Coal Mining Company.

JUSTICE HEIPLE delivered the opinion of the court:

Fred Zaderaka appeals from an order of the Illinois Human Rights Commission which affirmed the recommended order and decision of the administrative law judge and dismissed his complaint against Freeman United Coal Mining Company with prejudice. The administrative law judge found that Zaderaka failed to prove his claim of age discrimination by a preponderance of the evidence. We reverse and remand for further proceedings.

On November 16, 1981, 60-year-old Fred Zaderaka filed an application for employment as a welder with Freeman United Coal Mining Company (Freeman) at its new mine in Industry, Illinois. Of the 52 available hourly positions, only four were welder's positions. Freeman received approximately 2,500 applications for the 52 positions. Although Zaderaka had extensive employment experience as a welder and had previously been employed as a welder at another of Freeman's mines, he was not offered a welder's position at the Industry mine. The four individuals who were hired as welders at the new mine were younger than Zaderaka. Zaderaka filed a charge of discrimination against Freeman pursuant to the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 et seq.), alleging he was not hired because of his age. The Illinois Department of Human Rights filed a complaint charging age discrimination, and a public hearing on the complaint was held before an administrative law judge (ALJ).

At the hearing, Warren Hattendorf, Freeman's director of employee relations, testified that in early December he began reviewing the employment applications. He first separated the applications into four groups: company personnel, skilled, unskilled, and female and minorities. Hattendorf then reviewed the applications for unskilled positions in greater detail and transferred the applications of certain individuals to the skilled group because the applicants had employment experience which qualified them for skilled positions. At this point in the process, there were 500 applicants for 41 skilled positions. Approximately half of these applicants were then eliminated because of their prior work experience. Hattendorf stated that he sorted the remaining applications into categories corresponding to the specific position to be filled. He testified that there was a large number of applicants for certain positions, such as welder and tractor operator, and that he eliminated from consideration applicants for such positions who were employed in full-time, permanent positions and making a decent wage. He indicated Freeman attempted to hire unemployed individuals at the mine because there were many skilled workers in gen-

eral, and miners in particular, who were unemployed. Through reference checking, Hattendorf reduced the number of applicants for skilled jobs to 60 or 70. These candidates were interviewed by members of Freeman's management; applicants for welding and mechanics positions were also given tests to assess their ability. The applicants who were not eliminated during the interview or testing stages were offered employment with Freeman.

Hattendorf testified that Zaderaka was eliminated at the "second cut" and was not offered employment at the Industry mine because his application showed he was employed at Caterpillar Tractor Company and making a decent, liveable wage. Twenty-two-year-old Brad Batterton was hired as a welder at the Industry mine. Batterton's application reveals that when he submitted his application, he was employed as a welder by one of the contractors constructing the Industry mine and that he was making $3.10 per hour more than was Zaderaka. Batterton had less than two years of welding experience and the experience was not in mining. Hattendorf testified that he was hired because members of Freeman's management had observed his work and because he would be laid off when the contractor's work was completed and the mine opened. The three other individuals hired as welders were unemployed when they submitted their applications.

■ In cases involving charges of discrimination filed pursuant to the Illinois Human Rights Act, the complainant must first establish by a preponderance of the evidence a *prima facie* case of discrimination. The respondent then assumes the burden of articulating a legitimate and nondiscriminatory reason for its actions. Once a legitimate, nondiscriminatory reason is advanced, the complainant then has the burden of proving that the reason advanced is a pretext for discrimination. This three-step analysis was espoused by the Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, and is routinely applied by Illinois courts and administrative agencies considering discrimination charges. The ALJ found that Zaderaka met the initial burden by showing that he was in the protected age group (40 to 69 years), applied for an open position for which he was qualified, and was not hired while younger persons with similar and lesser qualifications were hired. The ALJ also determined that Freeman articulated a legitimate, nondiscriminatory reason for not hiring Zaderaka, the reason being that Freeman excluded employed applicants from consideration for positions with a large number of applicants. Finally, the ALJ found that the reason articulated by Freeman was not pretext and that Zaderaka failed to prove his case by a preponderance of the evidence. A Human Rights Com-

mission (Commission) panel agreed with the ALJ and dismissed Zaderaka's complaint with prejudice. Zaderaka then applied for judicial review of the Commission's order. Ill. Rev. Stat. 1985, ch. 68, par. 8—111.

■ At issue on appeal is the Commission's decision on the finding of pretext, for Zaderaka contends that the reason articulated by Freeman for its hiring decision was a pretext for age discrimination. The Commission's conclusion as to whether pretext has been proven is a finding of fact which may not be overturned unless it is against the manifest weight of the evidence. (*Board of Education v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206.) Based on a thorough review of the record, we have determined that Freeman's articulated reason for not hiring Zaderaka was pretextual and that the Commission's finding of no pretext is against the manifest weight of the evidence.

■ Freeman's representative repeatedly stated that Zaderaka was not hired solely because when he applied for the job, he was already employed and earning a decent wage. That Freeman hired 22-year-old Brad Batterton, a less experienced welder who was employed and earning a higher wage than Zaderaka when he applied for a welding position, makes it obvious that Freeman's explanation for its hiring decision is unworthy of belief. Freeman's assertion that it did not exclude Batterton from consideration because he was soon-to-be-unemployed is also unpersuasive for, as Hattendorf testified, many applicants for the welding positions who had previous mining experience were unemployed when they submitted their applications, so there was no need to carve out an exception in order to reach Batterton. In the abstract, Freeman's articulated decision to exclude employed applicants and hire the unemployed where possible is understandable and has the appearance of legitimacy. In reality, however, the alleged selection criterion was not applied to all equally, and as a result, Zaderaka was apparently excluded from consideration because of his employment and Batterton was not. Ultimately, 22-year-old Batterton was hired, though by Freeman's articulated reason, he, too, ought to have been excluded from consideration. Accordingly, the evidence strongly supports Zaderaka's contention that Freeman's articulated reason for its employment decision is unworthy of belief and a pretext for discrimination and that the Commission's decision is against the manifest weight of the evidence. We note, furthermore, that viewing the circumstances and evidence as a whole, it is reasonable to assume that during the screening stage Freeman did not actually eliminate applicants because they were employed and making a decent wage,

but that this criterion was concocted after the fact in an attempt to justify the challenged hiring decisions.

Although Zaderaka did not present evidence regarding Freeman's hiring decisions in other job classifications, in our review of the record, we noted the following. When explaining that an applicant's employed status excluded him from consideration, Hattendorf testified that employment was an eliminating factor only for positions which had an abundance of applications, "such as tractor operators and welders." Freeman's exhibit listing the individuals hired at the Industry mine and their employment status at the time of application shows that of the five tractor operators hired, only one was unemployed. This evidence provides further support for our conclusion that Freeman's stated reason for not hiring Zaderaka was unworthy of belief and a pretext for discrimination.

The record, considered as a whole, provides ample support for a finding of pretext. The Commission's findings and decision are therefore against the manifest weight of the evidence. We reverse and remand for a determination of damages and any other appropriate relief.

Reversed and remanded.

WOMBACHER, J., concurs.

JUSTICE BARRY, dissenting:
I would affirm the Illinois Human Rights Commission; therefore, I dissent from the majority decision. As to human rights violations, the law is very clear that the complainant must establish a *prima facie* case of discrimination, that the respondent must put forward a legitimate and nondiscriminatory reason for its action, and that complainant then has the burden of proving that the reason given was a pretext for discrimination. In this case, the respondent does not have to prove its reasons for not hiring complainant; rather, complainant must prove that those reasons are not valid. There is no dispute that complainant Zaderaka did establish a *prima facie* case for discrimination based on age and that respondent Freeman Coal articulated a legitimate nondiscriminatory reason for not hiring complainant.

The disputed question is whether complainant has carried his burden of proving that the reason put forward by respondent was merely a pretext. The administrative law judge (ALJ) found that pretext was not established, and the Human Rights Commission agreed. Under section 8—111(A)(2) (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(2)),

these findings of fact must be accepted by this court unless the findings are contrary to the manifest weight of the evidence. If there is any evidence in the record that supports the Human Rights Commission's decision, that decision was not contrary to the manifest weight of the evidence, and we must affirm. *Lipsey v. Human Rights Comm'n* (1987), 157 Ill. App. 3d 1054, 1065.

The majority opinion disregards some of the facts which plainly support the Human Rights Commission decision. The director of employee relations for Freeman Coal testified that, for the position of welder, he excluded those applicants who had full time permanent work. He also testified that he did not exclude those applicants who were employed at the mine site at the time they applied because he knew their work would end before the mine opened. Several private contractors were engaged to prepare the site for surface mining operations. This included clearing trees, removing top soil, building dams, and erecting a building. Batterton was employed by Ansco, a contractor responsible for dissembling the strip mining equipment at the Banner, Illinois, mine, transporting it to the Industry site, and reassembling the huge "wheel and shovel" machine. This job took two years, and the mine would not open until Ansco had finished its work. Batterton had done all the welding involved in erecting the machinery that would be used in the mining operation and had a good job performance record.

There is nothing devious or incredible about treating those applicants preparing the mine site for operation, including Batterton, as not permanently employed while regarding Zaderaka, who worked at Caterpillar as a welder, as having permanent employment. Freeman knew that Batterton and the others working at the site would be laid off before the mine opened and chose to place them in the same category as the unemployed at the time they applied. It is obvious that Batterton would be chosen over other unemployed applicants because he was familiar with the mine site and with the equipment he would be repairing and maintaining. The majority errs in treating Batterton as though he had permanent employment at the time he applied. The evidence in the record supports the Human Rights Commission finding of no pretext.

The majority also errs by usurping the function of the trier of fact to determine credibility of the witnesses. The ALJ found the Freeman Coal representative credible; the majority does not. The majority says Freeman Coal's witness was "unworthy of belief" because only one of five of the tractor operators hired was unemployed. (171 Ill. App. 3d at 629.) Examination of the record indicates that two of the five per-

sons hired for that position were employed at the site, like Batterton, and thus would be unemployed before the mine opened, and one was employed at a Midland Coal Company mine that was closing. Thus, only one was regularly employed. Because no discrimination was charged as to the hiring of tractor operators, Freeman Coal was not asked to articulate a reason for selecting one employed person for that position. Accordingly, I do not agree that the evidence in the record compels a finding that the witness was not credible.

A reviewing court may not substitute its judgment for that of the trier of fact. There is ample evidence in the record to support the findings of the ALJ, and I would hold that it should not be disregarded. The Human Rights Commission should be affirmed.