(Nos. 67659, 67661 cons.—

FRED ZADERAKA, Appellee, v. THE ILLINOIS HU-
MAN RIGHTS COMMISSION *et al.*, Appellants.

*Opinion filed September 27, 1989.*

174

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and William H. London, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Human Rights Commission.

Louis R. Hegeman and Kathryn Smith Mueller, of Gould & Ratner, of Chicago, for appellant Freeman United Coal Mining Company.

Donald R. Jackson, of Jackson, Mitchell & Collier, of Peoria, for appellee.

JUSTICE STAMOS delivered the opinion of the court:

Plaintiff, Fred Zaderaka, brought this suit against defendant Freeman United Coal Mining Company (Freeman), alleging age discrimination in employment in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). After a three-day hearing, an administrative law judge (ALJ) concluded that Zaderaka failed to prove his claim of age discrimination and recommended that the complaint be dismissed. The Illinois Human Rights Commission (Commission) affirmed and adopted the ALJ's recommended order and

decision and dismissed the complaint with prejudice. The appellate court reversed and remanded. (171 Ill. App. 3d 626.) We granted the petitions for leave to appeal filed by Freeman and the Commission, and the actions were consolidated for purposes of review.

The central issue raised by both appeals is whether the Commission's finding, that Freeman's articulated reason for failing to hire Zaderaka was not a pretext for discrimination, is against the manifest weight of the evidence. We answer this question in the negative and accordingly reverse the appellate court's judgment reversing the Commission's order.

## FACTS

The record reveals the following facts, which are largely undisputed. In November 1981, Freeman solicited applications for employment at its new mine in Industry, Illinois (the Industry mine). Freeman sought to fill 52 hourly positions. It received 2,800 applications for employment; 2,500 of these were for hourly positions.

Zaderaka, then 60 years of age, submitted an application for employment as a welder. He had extensive employment experience as a welder and had been previously employed in that position at another of Freeman's mines. Of the 52 available hourly positions, four were for welder positions. Zaderaka was not hired.

Warren Hattendorf, director of employee relations at Freeman, was responsible for reviewing, sorting, and culling the applications. He testified to the process he used in narrowing down the large number of applicants. He testified that he reviewed and sorted the 2,500 applications for hourly positions into skilled and unskilled groups. This process resulted in a pool of 500 applicants for skilled positions. Forty-one of the 52 hourly positions were skilled positions. Approximately 100 of the pool of 500 applicants sought welder jobs.

Hattendorf further testified that where there was a large pool of applicants for a particular skilled position and a substantial number of those applicants were unemployed, he eliminated those individuals whose applications revealed them to be already employed in "full time, permanent type positions." Hattendorf explained that this was done for two reasons. First, there were many unemployed skilled workers with relevant experience because a number of mines in the area had closed down. Second, Freeman wished to hire those individuals who could begin work immediately. Since there was a large number of applicants for the four welder positions, Hattendorf eliminated applicants for those positions if they had full-time, permanent employment.

Hattendorf also testified that there were approximately 100 people working for contractors who were constructing the Industry mine site, and that "probably all of them" applied for employment with Freeman at the mine. He testified that Freeman hired some of these individuals because they had been observed on a daily basis at the mine site by Freeman supervisors, and because they would be unemployed once the construction of the site was completed.

For the welder positions, after eliminating those employed in a full-time, permanent position, Hattendorf checked employment references of the remaining applicants. Next, applicants were interviewed by members of Freeman's management and were given a performance test. The applicants who were not eliminated during the interview or testing stages were offered employment with Freeman.

Hattendorf testified that Zaderaka was eliminated at the "second cut" and was not offered employment at the Industry mine because his application showed he was employed on a full-time, permanent basis with Caterpil-

lar Tractor and making a decent, livable wage. Zaderaka was making $9.95 per hour at Caterpillar.

Subsequently, Freeman hired as welders for the Industry mine the following individuals: Gerald Ruth (24 years old); Stephen Merrick (33 years old); Jimmie Weaver (47 years old); and Brad Batterton (22 years old).

Three of these four individuals were unemployed at the time they applied for the position. Brad Batterton was not unemployed at the time he applied. However, he was working for Ansco, one of the contractors hired to build the Industry mine, and was scheduled to be laid off upon Ansco's completion of work at the mine. Hattendorf testified that he was aware that Batterton would be unemployed prior to the opening of the mine.

Don Tippey, superintendent of the Industry mine, testified at the hearing that he had observed Batterton's work on numerous occasions and considered Batterton to be one of the better welders he had ever seen. Ansco, Batterton's employer, was responsible for disassembling the strip mining equipment at another mine site, transporting it to the Industry mine site, and reassembling the huge "wheel and shovel" machine. This job took two years, and the Industry mine would not open until Ansco finished its work. Batterton had done all the welding involved in erecting the machinery that would be used at the Industry mine and had a good job performance record.

Zaderaka filed a charge of age discrimination against Freeman; the Illinois Department of Human Rights subsequently filed with the Commission a complaint charging age discrimination in violation of the Illinois Human Rights Act (Ill. Rev. Stat. 1985, ch. 68, par. 1—101 *et seq.*). After the three-day hearing, the ALJ issued a recommended order and decision. The ALJ concluded Zaderaka had not shown that the reason advanced by

Freeman for failing to hire Zaderaka was a pretext for discrimination; accordingly, Zaderaka failed to prove his claim of age discrimination by a preponderance of the evidence. The ALJ, therefore, recommended that the complaint be dismissed.

The Commission affirmed and adopted the recommended order and decision, specifically stating that after reviewing the record, the Commission found that each of the factual findings made by the ALJ were well supported in the record. Therefore, the Commission stated, the findings are not against the manifest weight of the evidence and may not be overturned by the Commission.

Zaderaka then appealed the Commission's decision. A majority of the appellate court ruled that Freeman's hiring of Brad Batterton, combined with the fact that Freeman hired some employed individuals for tractor operator positions, showed that Freeman's articulated reason for rejecting Zaderaka was "unworthy of belief and a pretext for discrimination and that the Commission's decision is against the manifest weight of the evidence." (171 Ill. App. 3d at 629.) Justice Barry dissented.

## ANALYSIS

In analyzing employment discrimination actions brought under the Human Rights Act, the Commission and the Illinois appellate court have adopted the analytical framework set forth in United States Supreme Court decisions addressing claims brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.* (1982)) and the Age Discrimination in Employment Act (29 U.S.C. §621 *et seq.* (1982)). (*E.g., St. Mary of Nazareth Hospital Center v. Curtis* (1987), 163 Ill. App. 3d 566, 569.) This court will follow the same approach.

The Supreme Court set out a three-part analysis in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817. First, plaintiff must

establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. If a *prima facie* case is established, a rebuttable presumption arises that the employer unlawfully discriminated against plaintiff. Second, to rebut the presumption, the employer must articulate, not prove (*Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 259-60, 67 L. Ed. 2d 207, 219, 101 S. Ct. 1089, 1097), a legitimate, nondiscriminatory reason for its decision.

Finally, if the employer carries its burden of production, the presumption of unlawful discrimination falls and plaintiff must then prove by a preponderance of the evidence that the employer's articulated reason was not its true reason, but was instead a pretext for unlawful discrimination. This merges with plaintiff's ultimate burden of persuading the trier of fact that the employer unlawfully discriminated against plaintiff. (*Burdine*, 450 U.S. at 256, 67 L. Ed. 2d at 217, 101 S. Ct. at 1095.) This ultimate burden remains at all times with plaintiff. (*Burdine*, 450 U.S. at 253, 67 L. Ed. 2d at 215, 101 S. Ct. at 1093.) In the case at bar, brought under the disparate-treatment theory, rather than the disparate-impact theory (see *Wards Cove Packing Co. v. Atonio* (1989), 490 U.S. 642, ____, 104 L. Ed. 2d 733, 744, 109 S. Ct. 2115, 2119), the ultimate factual inquiry is whether defendant employer intentionally discriminated against plaintiff. *United States Postal Service Board of Governors v. Aikens* (1983), 460 U.S. 711, 715, 75 L. Ed. 2d 403, 410, 103 S. Ct. 1478, 1482. See also *Price Waterhouse v. Hopkins* (1989), 490 U.S. 228, 244-47, 104 L. Ed. 2d 268, 284-86, 109 S. Ct. 1775, 1787-89 (reaffirming the validity of the *McDonnell-Burdine* framework).

It is undisputed that Zaderaka met his burden of proving a *prima facie* case of discrimination and that Freeman articulated a legitimate, nondiscriminatory rea-

son for failing to hire him. The reason was that Freeman eliminated Zaderaka because he was employed on a full-time, permanent basis at the time he applied for the welder position. As we have stated, the Commission ruled that this articulated reason was not a pretext for discrimination; the appellate court reached the opposite conclusion.

The Human Rights Act provides that upon judicial review of a final order of the Commission, "the Commission's findings of fact shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." (Ill. Rev. Stat. 1985, ch. 68, par. 8—111(A)(2).) Our appellate court has held, and we agree, that whether an employer's articulated reason is pretextual is a question of fact. (*Board of Education of Waterloo Community Unit School District No. 5 v. Human Rights Comm'n* (1985), 135 Ill. App. 3d 206, 210, citing *K mart Corp. v. Human Rights Comm'n* (1984), 129 Ill. App. 3d 842.) Thus, the question before the appellate court, and the question before this court, is whether the Commission's finding of no pretext is against the manifest weight of the evidence. (Contrary to Zaderaka's counsel's statement at oral argument, the issue before us is not whether the decision of the *appellate court* is supported by the evidence.)

We agree with the reasoning and conclusion of the dissenting opinion in the case at bar. It is axiomatic that a reviewing court may not reweigh the evidence or substitute its judgment for that of the trier of fact. Findings of fact are entitled to deference, and this is particularly true of credibility determinations.

The principal witness in this case, Warren Hattendorf, testified for 1½ days of the three-day hearing. As we have set out in some detail, Hattendorf described the process he used to cull the large number of applicants and explained the reason for rejecting Zaderaka. As the

dissent points out, Hattendorf also testified that he did not exclude those applicants who were employed at the mine site at the time they applied because he knew their employment would end before the mine opened. This group included 22-year-old Brad Batterton. It is evident that the ALJ believed this testimony. The appellate court's conclusion that Freeman's articulated reason for the employment decision is "unworthy of belief" (171 Ill. App. 3d at 629) is a credibility determination which an appellate court is not competent to make. See *Aikens*, 460 U.S. at 716, 75 L. Ed. 2d at 411, 103 S. Ct. at 1482 (after employer proffers a legitimate, nondiscriminatory reason, the *trier of fact* "must decide which party's explanation of the employer's motivation it believes").

Moreover, we agree with the dissent's reasoning that:

> "[t]here is nothing devious or incredible about treating those applicants preparing the mine site for operation, including Batterton, as not permanently employed while regarding Zaderaka, who worked at Caterpillar as a welder, as having permanent employment. Freeman knew that Batterton and the others working at the site would be laid off before the mine opened and chose to place them in the same category as the unemployed at the time they applied. It is obvious that Batterton would be chosen over other unemployed applicants because he was familiar with the mine site and with the equipment he would be repairing and maintaining. The majority errs in treating Batterton as though he had permanent employment at the time he applied. The evidence in the record supports the Human Rights Commission finding of no pretext." 171 Ill. App. 3d at 631.

We also address certain evidence relied upon by the appellate court majority regarding the position of tractor operator. The majority noted that Hattendorf testified that current employment was an eliminating factor only for positions which had an abundance of applications, "such as tractor operators and welders." The majority

further pointed out that the record showed that of the five tractor operators hired, only one was unemployed at the time he applied. According to the majority, this evidence provided further support for its conclusion that Freeman's stated reason for rejecting Zaderaka was unworthy of belief and a pretext for discrimination. 171 Ill. App. 3d at 630.

Freeman strenuously objects to the appellate court's reliance on this evidence; we find its objection to be well-founded. First, as the dissent points out, Freeman was not charged with discrimination with respect to the tractor operator position and was thus not obliged to defend its decisions concerning that position. The majority itself acknowledged that "Zaderaka did not present evidence regarding Freeman's hiring decisions in other job classifications." 171 Ill. App. 3d at 630.

Moreover, during the hearing Freeman sought to present testimony on its hiring practices in job classifications other than the welder position and was precluded from doing so. Specifically, Freeman's counsel attempted to elicit from Hattendorf testimony as to why employed applicants were not excluded from consideration for electrician jobs. Zaderaka objected on relevance grounds and the ALJ sustained the objection, stating that Freeman was "trying to prove more than [it] had to prove." In these circumstances, the court's reliance on evidence concerning a job classification other than welder was not only erroneous, it also raises substantial questions of fairness and due process of law. See *Goldblatt Brothers, Inc. v. Addison Green Meadows, Inc.* (1972), 8 Ill. App. 3d 490, 502 (opinion upon rehearing).

For the foregoing reasons, we find that the decision of the Commission is amply supported by the record and is not against the manifest weight of the evidence. Accordingly, the judgment of the appellate court is reversed and the decision of the Commission, dismissing with

prejudice Zaderaka's complaint, is affirmed. In light of our disposition, we find it unnecessary to address Freeman's remaining contention, that the appellate court erred in implicitly ruling that a finding of pretext alone mandates a finding of discrimination.

*Appellate court reversed;*
*Illinois Human Rights*
*Commission affirmed.*