THE HUMAN RIGHTS COMMISSION *et al.*, Petitioners-Appellees, v. THE ROCKFORD TOWNSHIP HIGHWAY DEPARTMENT, Respondent-Appellant.

Second District    No. 2—90—0786

Opinion filed May 8, 1991.—Rehearing denied June 17, 1991.

Roland W. Burris, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Eve Moran, Assistant Attorney General, of Chicago, of counsel), for petitioner Human Rights Commission.

Michael K. Havrilesko, of Havrilesko & Associates, of Rockford, for petitioner Harold Fuzzell.

Peter Alexander and Gary C. Flanders, both of Alexander & Cicero, P.C., of Rockford, for respondent.

JUSTICE DUNN delivered the opinion of the court:

Respondent, Rockford Township Highway Department (Department), appeals from an order of the Illinois Human Rights Commission (Commission), finding that it committed a civil rights violation by refusing to hire claimant, Harold Fuzzell, as a road maintenance worker because of his race in violation of section 2—102(A) of the Illinois Human Rights Act (Act) (Ill. Rev. Stat. 1989, ch. 68, par. 2—102(A)). Respondent contends that the Commission's decision was against the manifest weight of the evidence because Fuzzell failed to prove he applied for the position in question, did not prove he was qualified for the position, and did not show that the Department's articulated reasons for not hiring him were pretextual. We reverse.

The Department was responsible for maintenance of about 200 miles of roads in Rockford Township. The Rockford Township Workfare program assigned Fuzzell to do part-time work for the Department from September 1982 until December 1984. Under the Workfare program, recipients of monthly general assistance benefits such as Fuzzell were required to accept part-time assignments to work for various governmental units in order to maintain their eligibility for benefits. The Department did not consider Fuzzell as one of its employees during the period he was assigned to it by the Workfare program.

In September 1984, Fuzzell filed charges against the Department with the Department of Human Rights. The Commission filed a formal complaint against the Department in December 1986. The com-

plaint alleges that Fuzzell applied in March 1984 and September 1984 for a position as a truck driver with the Department but was not hired because of his race. Instead of hiring Fuzzell, who is black, the Department hired Jack Mandala, a white male, for a truck driver position on May 3, 1984. The complaint further alleged that Fuzzell was as qualified as Mandala for the position or better qualified.

An administrative law judge (ALJ) conducted a hearing concerning the complaint on November 12 and 13, 1987. The following facts were brought out during the testimony at the hearing. During the period in which Fuzzell was assigned to the Department by the Workfare program, Jerry Tassoni was the Department commissioner, and Shirley Scherer was his secretary. Greg Calleia was the foreman until June 1984 when Tassoni discharged him. Scherer became Commissioner in May 1985, however, after defeating Tassoni in an election, and she rehired Calleia to serve as foreman. Early in May 1984, the Department hired Jack Mandala, a white male, to work as a road maintenance worker.

During Scherer's election campaign, she told Fuzzell that if he aided in her campaign, she would give him a job with the Department if elected. Scherer testified that shortly after taking office as Commissioner, she spoke to Fuzzell and told him to report for work on a particular day. He failed to do so. Scherer testified that she again spoke to Fuzzell and told him to report on another date. Fuzzell failed to appear on that date, however, and Scherer decided he was too unreliable to work for the Department. Fuzzell denied that Scherer had given him any specific dates to report to work. Fuzzell testified that he went to the Department offices several times in May 1985 to inquire about his new job only to be told by Greg Calleia that he should return at another time. Finally, Scherer told Fuzzell he would not be hired because he had twice failed to report for his first day of work.

According to Scherer and Calleia, the Department did not have a job classification entitled "truck driver." Instead, it had road maintenance workers and general maintenance workers. Scherer testified that the position she intended to hire Fuzzell for in May 1985 was a general maintenance position which would not have required him to be able to drive a truck. Calleia testified that road maintenance workers were required to obtain a Class C driver's license during their first 90 days on the job so they would be able to drive trucks. They were allowed to use township trucks to get the license. Calleia stated that the duties of road maintenance workers included filling potholes, plowing snow, and cutting grass along highways.

Fuzzell testified that he filled out applications for employment with the Department in March 1984 and September 1984. He stated that he gave the application to Scherer in March. According to Fuzzell, he gave his September application to an employee named Frank Fasula, who took it into Commissioner Tassoni's office. Fuzzell testified that Calleia went into Tassoni's office at the same time Fasula went in with the application. Shirley Scherer testified that she remembered Fuzzell picking up an employment application from her on one occasion but did not recall him turning in the application.

During Fuzzell's cross-examination, the Department's attorney asked whether he had a driver's license in 1984. Fuzzell responded by saying he had a Class A license. The Department's attorney then asked, "Had it been suspended?" Fuzzell stated, "It had been suspended, yes."

Calleia and Scherer both testified that Fuzzell would often leave at 11:30 on the days of his Workfare assignments even though he was supposed to stay until 12 noon. Calleia also stated that Fuzzell lacked initiative; he always had to be told what to do.

The ALJ who conducted the hearing issued a recommended order in which she concluded that the Department had illegally discriminated against Fuzzell by refusing to hire him because of his race and by hiring Mandala instead. The ALJ recommended that the Department be ordered to employ Fuzzell and also recommended awards of back pay and attorney fees. The ALJ determined that Fuzzell had applied for the position in March 1984 but found he had not applied in September 1984. A three-member panel of the Commission upheld the ALJ's recommended decision in an order dated April 12, 1990. The Department appealed to this court after the full Commission denied its petition for rehearing.

■■ Our supreme court has determined that the three-part analysis applied by the United States Supreme Court in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 36 L. Ed. 2d 668, 93 S. Ct. 1817, and *Texas Department of Community Affairs v. Burdine* (1981), 450 U.S. 248, 67 L. Ed. 2d 207, 101 S. Ct. 1089, for actions brought under title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e *et seq.* (1988)) also applies to claims under the Illinois Human Rights Act. (*Zaderaka v. Illinois Human Rights Comm'n* (1989), 131 Ill. 2d 172, 178.) The first step in this analysis is that the claimant must establish by a preponderance of the evidence a *prima facie* case of unlawful discrimination. (*Zaderaka*, 131 Ill. 2d at 178-79.) In order to do so, the claimant must prove by a preponderance of the evidence that he or she applied for a position and was qualified for the position but

was rejected under circumstances that give rise to an inference of unlawful discrimination. *Burdine*, 450 U.S. at 253, 67 L. Ed. 2d at 215, 101 S. Ct. at 1093.

If the claimant establishes a *prima facie* case, a rebuttable presumption arises that the employer discriminated against him or her. (*Zaderaka*, 131 Ill. 2d at 179.) To rebut this inference, the employer must articulate a legitimate, nondiscriminatory reason for its decision. (131 Ill. 2d at 179.) If the employer does so, the claimant must prove by a preponderance of the evidence that the articulated reason was not the true reason for the employer's decision but was instead a pretext for illegal discrimination. (131 Ill. 2d at 179.) The ultimate burden of persuading the trier of fact that the employer was guilty of unlawful discrimination rests with the claimant at all times. 131 Ill. 2d at 179.

■ We agree with the Department's contention that Fuzzell failed to establish a *prima facie* case of unlawful discrimination because he did not prove he was qualified for a road maintenance job. The evidence is unrebutted that the primary requisite for the job was the applicant's eligibility for a Class C driver's license, which had to be obtained within 90 days if the applicant was hired. While Fuzzell testified that he had a Class A driver's license in 1984, he also stated that it had been suspended. We interpret Fuzzell's testimony as indicating that the license had been suspended in 1984.

It is impossible to determine from Fuzzell's testimony whether Fuzzell was eligible to obtain a Class C license during the relevant time period, March 1984 through May 1984, the time of the alleged discrimination. If Fuzzell's Class A license was suspended at this time, he would not have been eligible to receive a Class C license. (See Ill. Rev. Stat. 1989, ch. 95½, par. 6–103(3).) Although it is apparent from his testimony that his license was suspended during some portion of 1984 at the very least, it cannot be determined exactly when the license was suspended or for how long.

Fuzzell had the burden of establishing that he was qualified for a position as a road maintenance worker and, therefore, that he was eligible to obtain a Class C driver's license. In light of the above, he failed to do so. Therefore, he failed to set forth a *prima facie* case under *Burdine*, and the Commission's order must be reversed.

■ Fuzzell argues that the license suspension is irrelevant because the evidence clearly establishes that the Department was unaware of it at the time of the alleged discrimination. The three-member panel of the Commission which considered this case agreed with this argument. In *Burdine*, however, the court stated that a claimant

"must prove by a preponderance of the evidence that she applied for an available position *for which she was qualified.*" (Emphasis added.) (*Burdine*, 450 U.S. at 253, 67 L. Ed. 2d at 215, 101 S. Ct. at 1094.) There is no exception mentioned in the case for situations such as the case at bar, in which the employer was unaware of the potential disqualifying factor at the time of the alleged discrimination.

A similar situation existed in *Village of Oak Lawn v. Illinois Human Rights Comm'n* (1985), 133 Ill. App. 3d 221. In that case, the claimant asserted that the Village unlawfully declined to hire her as a police officer because she was disabled. The complainant had made false representations on her employment application, although the Village was unaware of this at the time it refused to hire her. The court held that the claimant had failed to establish a *prima facie* case of unlawful discrimination and stated:

> "Walsh has not established at the outset that she was qualified for the job of a police officer. Trustworthiness, reliability, good judgment, and integrity are all material qualifications for any job, particularly one as a police officer. Her lying from the beginning disqualified her from consideration for the position and made her an unfit employee for the Oak Lawn Police Department." *Village of Oak Lawn*, 133 Ill. App. 3d at 224.

The claimant in the *Oak Lawn* case argued that her misrepresentations were irrelevant because the Village was unaware of them when it refused to hire her (133 Ill. App. 3d at 223), but the court rejected this argument. Likewise, we reject Fuzzell's argument that his potential lack of eligibility for a Class C driver's license was irrelevant because the Department was unaware of his 1984 license suspension at the time of the alleged discrimination.

■ Fuzzell also argues that his 1984 suspension was irrelevant because the evidence reveals that Scherer and Calleia helped Victor Macias, a road maintenance worker, obtain a temporary driving permit in 1985 after his license was suspended for driving under the influence of alcohol. It can be inferred from the evidence that Macias, who was a long-standing road maintenance worker for the Department at the time, already had a Class C license and that this license had been suspended. Thus, Macias may have been eligible for a judicial driving permit which would have allowed him to drive within the scope of employment related duties. (See Ill. Rev. Stat. 1989, ch. 95½, par. 6—206.1.) Fuzzell, however, did not have a Class C license in 1984, and, as we have seen, he could not have obtained one while his Class A license was suspended. Thus, his situation was distinguishable from that of Macias. Furthermore, the fact that the Department

laid off Macias after his license was suspended and only reinstated him after he received the restricted driving permit indicates that the ability to acquire a valid Class C license was a prerequisite for the job. Since Fuzzell failed to prove that he met this prerequisite at the relevant time, the order of the Commission finding the Township guilty of discrimination for refusing to hire him and awarding him back pay and other relief must be reversed.

Accordingly, the decision of the Illinois Human Rights Commission is reversed.

Reversed.

REINHARD, P.J., and NICKELS, J., concur.