2025 IL App (1st) 240180-U

No. 1-24-0180

Order filed July 29, 2025

Second Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| JERICO MATIAS CRUZ, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | Charge No. 2022 CP 1796 |
| THE ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN RIGHTS, and | ) | |
| NVA FOREST GLEN VETERINARY MANAGEMENT, | ) | |
| LLC, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE ELLIS delivered the judgment of the court.
Presiding Justice Van Tine and Justice McBride concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Affirmed. Commission did not abuse its discretion in upholding determination of lack of substantial evidence of discrimination.

¶ 2    Petitioner Jerico Matias Cruz filed with the Illinois Department of Human Rights

(Department) a sworn charge of discrimination against respondent NVA Forest Glen Veterinary

Management, LLC, (Forest Glen). Petitioner alleged that Forest Glen discriminated against him

when it denied him the full and equal enjoyment of its facility based on his race (Asian), sex (male), national origin (Philippines), military status (honorably discharged U.S. Army veteran), citizenship status (U.S. citizen), and arrest record, in violation of section 102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2022)). The Department dismissed the charge for lack of substantial evidence. Cruz requested a review with the Illinois Human Rights Commission (Commission), which sustained the finding. Cruz filed a direct appeal with this Court. We affirm.

¶ 3     Cruz filed the charge with the Department in November 27, 2022, alleging that, on March 25, 2022, Forest Glen called the police to remove him from its facility when he inquired about X-ray prices and asked for a future appointment for his dog. Cruz argued that, under similar circumstances, Forest Glen gave more favorable treatment to similarly situated individuals who were non-Asian, female, non-Filipino, non-veteran, "non-US citizen," and who did not have an arrest record.

¶ 4     The Department investigated Cruz's charge and prepared a report dated August 23, 2023. As part of its investigation, the Department's investigator interviewed Cruz and hospital manager Caroline Bryson. Exhibits included Forest Glen's mask policy, check-in process sign, veterinarian client patient relationship policy, and veterinarian notes. The investigator recounted as uncontested facts that Cruz visited Forest Glen's facility in March 2022 and did not receive any veterinary services and, on June 14, 2022, Cruz sought and received services on a walk-in emergency basis.

¶ 5     During the interview, Cruz stated that on or about March 25, 2022, he visited Forest Glen's veterinary facility to inquire about X-ray prices and schedule an appointment for his dog.

Forest Glen called the police to publicly remove Cruz from the facility. Cruz stated he believed he was denied the full and equal enjoyment and services of Forest Glen's facility due to his race, sex, national origin, military status, citizenship status, and arrest record. Cruz acknowledged he did not disclose his protected classifications to anyone at Forest Glen, and he was not asked or required to do so. He stated that his driver's license reflects that he is a veteran. Cruz stated he was unaware "whether any other customers received services from [Forest Glen] under similar circumstances."

¶ 6     Bryson told the investigator that in March 2022 Forest Glen had a masking policy for the purposes of protecting the health and safety of its staff and customers to prevent the spread of COVID-19. Customers were permitted to wear their own face masks, and the facility had a station in the waiting room with hand sanitizer and single-use, disposable masks and gloves. Forest Glen consistently administered its masking policy and asked all customers to wear a mask inside the premises until February 2023. Individuals who refused to wear a mask were asked to wait outside. In March 2022, Forest Glen had "prominently posted signage" explaining the check-in process on its front door. The signage stated that Forest Glen "cannot fulfill walk-in refill request or allow for walk-in appointments unless it is an urgent emergency."

¶ 7     Bryson further stated that Cruz was unknown to Forest Glen in March 2022. Cruz was not an existing client, his dog had not been seen before, and the staff did not recognize him or know his name. Cruz walked into the facility three times, on three separate days, without an appointment and having established no veterinarian-client patient relationship with Forest Glen.

¶ 8     During the first visit, on March 21, 2022, Cruz entered the premises without an appointment and not wearing a face mask, despite visible signs on the windows and doors

stating, " 'Face Mask or covering required.' " A customer service representative asked Cruz to put on a mask, and Cruz refused. Cruz approached the front desk and asked how much an X ray for his dog would cost, but he refused to answer any questions about the type of care his dog needed. Cruz ultimately left. On March 22, 2022, Cruz returned and approached the front desk without wearing a mask. He again demanded the cost of an X ray for his dog, but refused to answer any questions and left.

¶ 9 Bryson also told the investigator that, on or around March 25, 2022, Cruz returned a third time not wearing a mask. He again asked for the cost of an X ray for his dog and demanded it be performed. Staff described Cruz as "acting frantic, interrupting, and talking over everyone, getting loud, calling staff names and telling them they were not doing their jobs correctly." Cruz grabbed at his waist area and held his body as if he had "something" on his waistband. Staff asked Cruz to leave, but Cruz refused. The staff then called the police.

¶ 10 While waiting for the police to arrive, the hospital manager explained to Cruz they were not going to establish a veterinarian-client patient relationship with him based on their interactions with him. The manager asked Cruz to leave, but Cruz refused. When police arrived, an officer asked Cruz to leave. Cruz was "loud, rude, and animated, waving his arms around." He ultimately left the lobby and passed by the facility's door several times before leaving the area.

¶ 11 On June 14, 2022, Cruz returned to Forest Glen's facility around 6 p.m. on a walk-in emergency basis carrying his dog, which was "soaking wet and in rigor mortis." Despite their previous interactions with Cruz, Forest Glen provided service and examined the dog.

¶ 12    Bryson stated that Forest Glen's denial of service was not related to any legally protected classes, but rather was based on Cruz's behavior and refusal to cooperate. While staff perceived Cruz to be male, they were not aware of Cruz's race, national origin, military status, or arrest record, nor did they know his name. Forest Glen had only denied service one other time, in 2020, where an "unknown individual (Caucasian/male)" walked in without an appointment or veterinarian-client patient relationship, demanded to speak directly with a veterinarian for advice, and became angry when told he needed to schedule an office visit first to establish patient care. Forest Glen asked the man to leave and not return, and the man complied with the request to leave the premises.

¶ 13    In rebuttal, Cruz stated he spoke to staff members in his "normal speaking voice" and did not believe he engaged in any disrespectful or threatening conduct. He was not wearing a face mask because COVID-19 protocols were relaxed in Illinois at the time of his visit to Forest Glen.

¶ 14    The investigator recommended a finding of lack of substantial evidence on all counts. The investigator found no evidence that Cruz was denied full and equal enjoyment of Forest Glen's facility or its services based on his race, sex, national origin, military status, citizenship status, or arrest record. The investigator noted that Cruz conceded he did not disclose his name or any protected bases to Forest Glen.

¶ 15    The investigator also noted that Forest Glen maintained that it refused Cruz services because he refused to comply with its COVID-19 mask policy, refused to cooperate with reasonable and standard requests for information, and exhibited uncooperative, erratic behavior. The investigator found that, even if Cruz disagreed with Forest Glen's assessment of his

behavior, he failed to show these reasons for denying him services were a pretext for any of his protected bases.

¶ 16    The Department accepted the investigator's recommendations and dismissed Cruz's charge for lack of substantial evidence.

¶ 17    Cruz filed a request for review with the Commission. He asserted that Forest Glen made false statements at the fact-finding conference, quoting most of Forest Glen's statements in the investigator's report and stating they were "completely made up." Cruz stated that on March 25, 2022, he had no prior walk-ins or scheduled appointments, contrary to Forest Glen's false statements, and he asserted that he forgot to grab a medical mask in the hospital lobby.

¶ 18    Cruz contended that on March 25, 2022, he visited Forest Glen's facility for an X-ray and examination of his dog after he was falsely accused of kicking and abusing his dog by an Apple store manager on March 23, 2002, who reported the abuse to the police. A Village of Skokie animal control officer allegedly examined his dog and found no "signs and symptoms of kicking and abuse." Cruz went to Forest Glen for a "second opinion" on whether his dog was abused. He stated he would not comment on the emergency examination his dog received on June 14, 2022, because it was "irrelevant" to his complaint.

¶ 19    Cruz also alleged that the Department erred in dismissing his charge because he had "prima facie evidence" of his dog's "adoption papers, medical records, chronological order of events prior to March 25, 2022, and other supporting material evidence." He asserted that the Department's investigator failed to follow proper procedure at the fact-finding conference by not allowing Cruz to answer and verify "all questions pertaining to his public accommodation complaint," and Cruz was not given an opportunity to rebut Forest Glen's "false statements."

¶ 20     As exhibits to his request for review, Cruz attached email exchanges between him and the Department, an email from the Chicago Police Department confirming receipt of a Freedom of Information Act request, records regarding Cruz's dog's adoption and medical treatment, and a Skokie Police Department report regarding an incident involving Cruz. One attached email, sent on August 17, 2023, from Cruz to the Department's Investigator states that the Department's fact-finding conference was "one-sided and biased" against him. The email lists a Google Drive hyperlink, which Cruz describes in the email as "prima facie evidence." Also attached is a page titled "Forest Glen Animal Hospital Videos and Other Supporting Prima Facie Evidence, Dated March 25, 2022." The page lists hyperlinks to a Google Drive folder and YouTube video. We note that the record on appeal contains no video footage but does contain what appear to be stills from a YouTube video.

¶ 21     The Department filed a response to Cruz's request for review, reiterating its findings that its investigation did not reveal substantial evidence supporting Cruz's charge. The Department added that it did not have jurisdiction over Cruz's count alleging he was discriminated based on his arrest record, because having an arrest record was not a protected class. The Department stated that Cruz failed to provide any additional evidence warranting a reversal of its original determination, and he failed to present any alternative version of the allegedly false statements made by Forest Glen.

¶ 22     On January 17, 2024, the Commission entered a final order sustaining the Department's dismissal for lack of substantial evidence. The Commission found that Cruz failed to identify similarly situated persons outside his protected class who were treated more favorably, such that the Commission could infer Forest Glen denied him its facilities and services because of his

protected class. The Commission also stated that Cruz's count alleging he suffered discrimination based on his citizenship status was meritless because citizenship status was not a protected class for purposes of public accommodation claims under the Act.

¶ 23    Pursuant to section 8-111(B)(1) of the Act (775 ILCS 5/8–111(B)(1) (West 2022)), Cruz timely filed a *pro se* petition for administrative review in this court.

¶ 24    On appeal, Cruz seeks reversal of the Commission's decision sustaining the dismissal of his charge. Cruz argues that the Commission failed to "properly review" the exhibits attached to his request for review and failed to "conduct complainant interview" and compel and subpoena records from Forest Glen that would be *prima facie* evidence. Cruz also argues the Commission failed to "procedurally follow and review" his request for review as provided under the Act and the Illinois Administrative Code and to "properly review the prima facie evidence and material facts" set forth in his complaint and request for review.

¶ 25    We review the Commission's decision for an abuse of discretion. *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. We will not reverse the Commission's decision unless it is arbitrary or capricious, meaning "it contravenes legislative intent, fails to consider a critical aspect of the matter, or offer[s] an explanation so implausible that it cannot be regarded as the result of an exercise of the agency's expertise." *Id.* ¶ 33. We will not reweigh the evidence or substitute our judgment for that of the Commission. *Id.*

¶ 26    Under the Act, the Department conducts an investigation and may dismiss a charge of discrimination upon a determination that there is no "substantial evidence" supporting the charge. 775 ILCS 5/7A-102(C), (D)(3) (West 2022). The Act defines "substantial evidence" as "evidence which a reasonable mind accepts as sufficient to support a particular conclusion and

which consists of more than a mere scintilla but may be somewhat less than a preponderance" of proof. 775 ILCS 5/7A-102(D)(2) (West 2022). "[M]ere speculation and conjecture" is not substantial evidence. *Folbert v. Department of Human Rights*, 303 Ill. App. 3d 13, 25 (1999).

¶ 27     A complainant may seek review of the Department's dismissal of the charge by filing a request for review with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2022). During its review, the Commission "may consider the Department's report, any argument and supplemental evidence timely submitted, and the results of any additional investigation conducted by the Department in response to the request." 775 ILCS 5/8-103(B) (West 2022). Where the Commission sustains the dismissal, the complainant may, as here, seek direct appellate review of the Commission's final determination. 775 ILCS 5/8-111(B)(1) (West 2022).

¶ 28     A complainant may prove discrimination with direct evidence, such as a written or oral admission, or indirect evidence. *Board of Education of City of Chicago v. Cady*, 369 Ill. App. 3d 486, 495 (2006); *Lalvani v. Illinois Human Rights Comm'n*, 324 Ill. App. 3d 774, 790 (2001). Here, there was no direct evidence of discrimination, so Cruz was required to establish unlawful discrimination with indirect evidence. To show indirect evidence, the complainant bears the initial burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34.

¶ 29     Cruz asserted discrimination premised on the denial of full and equal enjoyment of the Forest Glen facility. Section 5-102(A) of the Act provides that it is a civil rights violation for any person, on the basis of unlawful discrimination, to "[d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." *Id.* The

Act defines a place of public accommodation as including a "professional office of a health care provider, hospital, or other service establishments." 775 ILCS 5/5-101(A)(6) (West 2022).

¶ 30     The Act defines "unlawful discrimination," in relevant part, as discrimination against a person because of his actual or perceived race, sex, national origin, and military status. 775 ILCS 5/1-103(Q) (West 2022). To establish a *prima facie* case of discrimination in public accommodation, a complainant must show that (1) he is a member of a protected class; (2) he tried to exercise the right to full benefits and enjoyment of a place of public accommodation; (3) he was denied those benefits and enjoyment; and (4) he was treated less favorably than similarly situated persons not within his protected class. *Dunn v. Human Rights Comm'n*, 2022 IL App (1st) 211155-U, ¶ 34 (unpublished decision under Supreme Court Rule 23(e)).

¶ 31     The Commission did not abuse its discretion in finding that Cruz failed to establish a *prima facie* case of unlawful discrimination based on his race, sex, national origin, military status, citizenship status, and arrest record. Initially, the Act does not recognize citizenship status and having an arrest record as protected classes for purposes of a public accommodation claim under the Act. See 775 ILCS 5/1-103(Q) (West 2022). So Cruz's counts alleging discrimination based on citizenship status and arrest record were properly dismissed on that ground alone.

¶ 32     The other bases underlying Cruz's discrimination charge—race, sex, national origin, and military status—are protected classes. 775 ILCS 5/1-103(Q) (West 2022). And it is undisputed that Forest Glen is a place of public accommodation, Cruz attempted to exercise his right to full benefits and enjoyment of Forest Glen, and he was denied those benefits and enjoyment.

¶ 33     But during the Department's investigation of his charge, Cruz acknowledged he did not disclose any of his protected classifications to anyone at Forest Glen. Crucially, he also

- 10 -

acknowledged that he was unaware whether any other customers received services from Forest Glen under similar circumstances. Thus, Cruz did not establish that he was "treated less favorably than similarly situated persons outside his protected class," and the Commission properly determined that he failed to establish a *prima facie* case of unlawful discrimination. (Internal quotation marks omitted.) *Dunn*, 2022 IL App (1st) 211155-U, ¶ 34; see also *McCoy v. Homestead Studio Suites Hotels*, 390 F. Supp. 2d 577, 583-85 (S.D. Tex. 2005); *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 178 (1989) (claims under the Act are evaluated in accordance with federal decisions addressing federal antidiscrimination laws). We thus find that the Commission's final order sustaining the Department's dismissal of Cruz's charge for lack of substantial evidence was not an abuse of discretion.

¶ 34    Still, Cruz claims the Commission failed to (a) properly review the exhibits attached to his request for review and the "prima facie evidence and material facts" and (b) follow the "administrative procedure" of the Act and Title 56 of the Illinois Administrative Code. However, Cruz's undeveloped and peripheral allegations are not enough to overcome the Commission's finding that the Department's investigation did not reveal "substantial evidence" supporting his charge. See *Folbert*, 303 Ill. App. 3d at 25; see Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) (a brief must "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on").

¶ 35    In the lengthy appendix to his brief, Cruz includes not only exhibits he attached to his petition for review but documents that are not in the record on appeal. For instance, he includes photographs of a dog, documents regarding his Freedom of Information Act requests, a service request to pick up a dead animal, and congressional election statistics, all presented for the first

time on appeal. Cruz says the appendix documents are *prima facie* evidence supporting his claim, but the Department's investigator failed to conduct a complainant interview and to compel and subpoena Forest Glen during and after the fact-finding conference to obtain that evidence. Cruz then recites a pages-long litany of "irregularities of material facts" he claims are hearsay and fabrications by Forest Glen, contrasting them with information he pulls from documents attached as appendices to his brief. But we cannot consider facts and evidence not presented to the Commission. See 735 ILCS 5/3-110 (West 2022) ("No new or additional evidence in support of or in opposition to any finding, order, determination, or decision of the administrative agency shall be heard by the court.").

¶ 36    Further, Cruz made extensive arguments in his request for review to the Commission regarding Forest Glen's alleged false statements and the Department's failure to comply with procedure, and attached numerous exhibits. Yet the Commission sustained the dismissal of Cruz's charge, and nothing in the record demonstrates that the Department was remiss in its investigation of Cruz's charge.

¶ 37    The Commission did not act in an arbitrary or capricious manner in upholding the Department's dismissal for lack of substantial evidence. We find no abuse of discretion. The final decision of the Commission is affirmed.

¶ 38    Affirmed.