2026 IL App (1st) 241474-U

No. 1-24-1474

Order filed March 6, 2026

Sixth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| DONALD BIANCHI, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Human Rights |
| | ) | Commission. |
| v. | ) | |
| | ) | No. 19 CA 1426 |
| THE HUMAN RIGHTS COMMISSION and EXELON | ) | |
| (COMMONWEALTH EDISON CO.), | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

JUSTICE GAMRATH delivered the judgment of the court.
Presiding Justice C.A. Walker and Justice Hyman concurred in the judgment.

**ORDER**

¶ 1    *Held*:  We affirm the decision of the Illinois Human Rights Commission where petitioner failed to establish a *prima facie* case of termination based on unlawful discrimination.

¶ 2    Petitioner Donald Bianchi filed a discrimination complaint with the Illinois Human Rights Commission, alleging Exelon (ComEd) terminated him because of his race, age, and disability in violation of the Illinois Human Rights Act (775 ILCS 5/1-101 *et seq.* (West 2018)). An

administrative law judge (ALJ) dismissed the complaint with prejudice, the Commission adopted that decision, and Bianchi appealed. We affirm.

¶ 3 Bianchi worked for ComEd from 1999 until his 2018 termination. As a crew leader, he was responsible for overseeing and assisting teams of employees to build and maintain electrical power systems. ComEd asserts Bianchi was terminated due to safety violations that made him a "risk to his crew and himself."

¶ 4 On May 4, 2016, Bianchi and his crew were replacing an underground transformer which required creating and enforcing a "zone of protection" where "six isolation points needed to be tagged and grounded." Bianchi's crew only tagged and grounded three locations in violation of ComEd's safety rules. Bianchi admitted rushing the job and was suspended for 20 days and demoted.

¶ 5 On February 16, 2018, after being promoted back to crew leader, Bianchi again violated safety rules by cutting a live primary cable without testing it or using grounded equipment, causing a blown fuse and power outage. ComEd terminated him effective March 7, 2018.

¶ 6 Bianchi filed a charge of discrimination with the Illinois Department of Human Rights, which did not issue an investigative report within 365 days in violation of section 7A-102 of the Act (775 ILCS 5/7A-102(G)(1) (West 2018)). This allowed Bianchi to proceed before the Commission. *Id.* § 7A-102(G)(2).

¶ 7 In his Commission complaint, Bianchi alleged he was terminated because he is Caucasian, age 48, and has bipolar disorder, and that younger, non-Caucasian, or non-disabled employees committed similar errors without being fired. Bianchi's attached notes identified employees who allegedly committed similar safety violations and were not terminated. However, Bianchi did not

identify their races or ages. He also cited comments from his supervisor Scott Nicholson and others that he believed referenced his mental health, though his medical records from 2002 and 2004 did not reference bipolar disorder.

¶ 8    On September 27, 2023, ComEd filed a motion for summary decision, supported by declarations and Bianchi's deposition. In it, ComEd argued Bianchi could not establish race or age discrimination because he failed to identify similarly situated non-Caucasian or younger employees who were treated more favorably and he offered no evidence that ComEd's proffered legitimate and non-discriminatory explanation for his termination was pretextual. Bianchi also could not establish disability discrimination because he could not identify anyone at ComEd who knew that he was, or perceived him to be disabled, or that his disability served as the basis for his termination.

¶ 9    On October 30, 2023, the ALJ issued a recommended order and decision granting ComEd's motion, finding "no genuine issue of material fact exists in this matter, and that [Bianchi] is unable to advance a *prima facie* case of discrimination on the basis of disability, race, or age." The ALJ found that Bianchi failed to establish a *prima facie* case of race or age discrimination because he did not submit evidence, counter-affidavits, or a response in opposition to ComEd's motion that would show that a similarly-situated employee outside of his protected classes was treated better under similar circumstances to those that resulted in his termination. Specifically, the ALJ found that none of the employees Bianchi named in his complaint and deposition supported his claims because the employees were Caucasian and older than him and were not outside his protected classes. ComEd also reported that it had no record of one of the employees Bianchi claimed committed the same safety violation. The ALJ further found that, even assuming Bianchi could

make a *prima facie* case, he could not show that ComEd's stated reason for firing him (repeated safety violations) was pretextual.

¶ 10    The ALJ likewise held that Bianchi failed to establish a *prima facie* case of disability discrimination because he was unable to show that Nicholson knew or believed Bianchi had a disability. Nicholson offered an uncontested statement that he neither knew nor perceived any disability when he referred Bianchi for termination. He was also unaware of doctor's notes or medical records detailing a disability. Bianchi's own medical documents failed to mention bipolar disorder, and ComEd submitted forms signed by Bianchi stating that he did not suffer from any disorders or mental health issues. The ALJ concluded this unrefuted evidence "foreclosed any possibility that Nicholson could have believed or perceived that [Bianchi] was bipolar." Moreover, Bianchi's interpretation of the alleged comments referencing his disability was speculative and "insufficient to avoid summary judgment." The ALJ also noted that Bianchi's failure to respond to ComEd's motion for summary decision would have warranted dismissal for want of prosecution even apart from the merits.

¶ 11    Bianchi requested review of the ALJ's decision due to noncompliance with "ADA *** due to [his] disability." The Commission declined further review and adopted the ALJ's recommended order and decision as the "[o]rder of the Commission."

¶ 12    On appeal, Bianchi argues that the Commission erred in granting ComEd's motion for summary decision and dismissing his complaint of discrimination where he established that he was terminated due to his disability.

¶ 13    To start, while Bianchi's notice of appeal states that he is appealing from the Commission's decision granting ComEd's motion for summary decision and dismissing his complaint of

discrimination based on race, age, and disability, his brief only references his alleged disability. [1]
Therefore, we address Bianchi's contentions as to that issue only, and any arguments pertaining to race or age are waived. See *Multiut Corp. v. Draiman*, 359 Ill. App. 3d 527, 539 (2005) ("[i]ssues raised in the notice of appeal but not raised or argued to this court are generally deemed waived").

¶ 14      Although Bianchi's brief violates multiple requirements of Illinois Supreme Court Rule 341(h) (eff. Oct 1, 2020), governing the content of appellate briefs, we elect to reach the merits given the clarity of the issue and respondents' adequate briefing.

¶ 15      Under the Act, summary decision is appropriate where "the pleadings and affidavits, if any, show that there is no genuine issue as to any material fact." 775 ILCS 5/8-106.1(2) (West 2024). "Genuine means there is evidence to support the position of the nonmoving party." (Internal quotation marks omitted.) *McLaughlin v. Cook County*, 2023 IL App (1st) 221869, ¶ 30. A "material fact is one that might affect the outcome of the suit under the applicable substantive law." (Internal quotation marks omitted.) *GreenPoint Mortgage Funding, Inc. v. Hirt*, 2018 IL App (1st) 170921, ¶ 17. As with summary judgment, when considering whether to grant summary decision, the record is construed "strictly against the movant and liberally in favor of the nonmovant" and summary judgment should only be granted if "the movant's right to judgment is clear and free from doubt." See *Givens v. City of Chicago*, 2023 IL 127837, ¶ 46. Granting of summary decision is reviewed *de novo*. *Sola v. Illinois Human Rights Com'n*, 316 Ill. App. 3d 528, 536 (2000).

---

[1] Bianchi's notice of appeal also erroneously lists April 27, 2024, instead of April 25, 2024, as the date of the Commission's decision.

¶ 16    The Act prohibits unlawful discrimination based on physical or mental disability. 775 ILCS 5/1-102(A) (West 2018). It is also a civil rights violation for an employer to terminate an individual based on unlawful discrimination. *Id*. § 2-102(A) (West 2018). Discrimination may be proven through either direct or indirect evidence. *Sola*, 316 Ill. App. 3d at 536. Here, as there was no direct evidence of discrimination, Bianchi was required to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Zaderaka v. Illinois Human Rights Com'n*, 131 Ill. 2d 172, 179 (1989). If a *prima facie* case is established, a rebuttable presumption arises that an employer unlawfully discriminated against a petitioner, which the employer can rebut by articulating a legitimate and non-discriminatory reason for its decision. *Id*. If the employer rebuts the presumption, the petitioner must prove by a preponderance of the evidence that the "articulated reason was not [the] true reason, but was instead a pretext for unlawful discrimination." *Id*.

¶ 17    To establish a *prima facie* case of unlawful discrimination in a case of alleged termination of employment based on disability, a petitioner must prove that "(i) [he or] she was disabled within the definition of the IHRA; (ii) [his or] her disability is unrelated to her ability to perform the functions of the job [he or] she was hired to perform; and (iii) an adverse job action was taken against [his or] her related to [his or] her disability." *Kreczko v. Triangle Package Machinery Co.*, 2016 IL App (1st) 151762, ¶ 37.

¶ 18    Here, we find no error in the Commission's decision. Even if Bianchi's alleged bipolar disorder constituted a disability under the Act, the Commission properly determined that he failed to establish a *prima facie* case of disability discrimination where he failed to prove that anyone at ComEd was aware of his disability and terminated him because of his disability.

¶ 19    Bianchi contended that Nicholson and other employees were aware of his alleged bipolar disorder due to knowledge of his medical records and comments made about his disability or mental state. However, Nicholson denied knowledge of Bianchi's disability, did not perceive Bianchi to have a disability, and was unaware of medical documents that Bianchi alleged alluded to his disability. Bianchi failed to present evidence or affidavits to rebut these claims or further support his contentions. Not only did the medical documents Bianchi attached to his complaint not allude to him being diagnosed with bipolar disorder, ComEd provided documents where Bianchi specifically denied having any disorders or other mental health issues. Accordingly, Bianchi failed to establish a *prima facie* case of unlawful discrimination based on disability.

¶ 20    Moreover, even if Bianchi had established a *prima facie* case, Nicholson stated in his declaration that he referred Bianchi for termination due to a violation of ComEd's safety procedures during his employment. The record reflects two separate incidents within two years where Bianchi violated safety rules. Bianchi failed to provide evidence that ComEd's legitimate and non-discriminatory reason for terminating his employment was pretextual. As such, the Commission did not err in finding no genuine issue as to any material fact, granting summary decision in ComEd's favor, and dismissing Bianchi's complaint.

¶ 21    For the foregoing reasons, we affirm the decision of the Commission.

¶ 22    Affirmed.