2020 IL App (1st) 190612-U

No. 1-19-0612

Order filed April 9, 2020

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| FRANCISCO J. MOSQUEDA, | ) | Petition for Direct |
| | ) | Administrative Review of a |
| Petitioner-Appellant, | ) | Decision of the Illinois Human |
| | ) | Rights Commission. |
| v. | ) | |
| | ) | |
| THE HUMAN RIGHTS COMMISSION, THE | ) | No. 2014 CA 0861 |
| DEPARTMENT OF HUMAN RIGHTS, and NEW | ) | |
| PROCESS STEEL, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

JUSTICE LAMPKIN delivered the judgment of the court.
Presiding Justice Gordon and Justice Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of employment discrimination for lack of substantial evidence.

¶ 2    Petitioner Francisco Mosqueda appeals *pro se* from a final order entered by the Illinois Human Rights Commission (Commission) sustaining the Illinois Department of Human Rights' (Department) dismissal of his charge of employment discrimination by his former employer,

respondent New Process Steel (New Process), brought under the Illinois Human Rights Act (Act) (775 ILCS 5/1-101, *et seq.* (West 2014)). Petitioner alleged New Process denied him a leave of absence, discharged him, and subsequently failed to rehire him, all based on his age and arrest record. The Department dismissed his charge for lack of substantial evidence. The Commission sustained the Department's dismissal and petitioner appealed. We affirm.[1]

¶ 3    Petitioner was employed as a machine operator helper at New Process from March 15, 2003, through June 10, 2013. When New Process refused to rehire him after he served a jail term, petitioner filed a charge of employment discrimination with the Department.

¶ 4    Petitioner asserted six different bases for the charge. He charged that, on May 21, 2013, New Process denied him a personal leave of absence from work without giving him a reason, and that the denial was based upon both his age and arrest record. Petitioner next charged New Process discharged him on June 7, 2013, with no reason given, and that the denial was based on both his age and arrest record. Lastly, petitioner charged New Process "failed to rehire" him on September 23, 2013, due to his age and arrest record. Petitioner alleged he had been arrested on April 1, 2013, and New Process was aware of both his age (48) and arrest. He alleged his job performance had met New Process's expectations, he was qualified for the position of machine operator helper, New Process had openings for the position when he applied, similarly situated younger employees who requested leave of absence were not treated as he had been, and similarly situated younger employees who applied for positions were rehired. Petitioner alleged that all employment

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

discrimination premised upon information obtained from his arrest record were "per se violation[s] of the Human Rights Act."

¶ 5      Petitioner's charge was investigated by the Department, and the investigator issued a report after interviewing petitioner and New Process's human resources administrator Sherry Balzer and reviewing assorted documents. The investigator reported the parties agreed that New Process hired petitioner on February 17, 2003, as a "skid maker" in its Alsip, Illinois factory. On May 7, 2013, petitioner requested time off work from Balzer to attend a court date on June 7, 2013. On June 7, 2013, petitioner was convicted of driving with a revoked license, and was incarcerated from June 7, 2013 through September 13, 2013. Petitioner never requested Family Medical Leave Act (FMLA) employment protection from New Process.

¶ 6      Petitioner claimed New Process failed to grant him a leave of absence, discharged him, and failed to rehire him based on his age and arrest record. New Process responded that petitioner's age and arrest record did not play any role in its actions. It stated it did not grant leaves of absence in order to serve a jail sentence as a matter of policy, petitioner had resigned, and it did not rehire him because there were no vacant positions.

¶ 7      Petitioner told the investigator that he had a good employment history and never received any discipline from New Process, and New Process never provided employees with an employee handbook or informed them what their leave policies were. On March 31, 2013, petitioner was arrested for driving without a license. According to petitioner, he spoke with Balzer on May 21, 2013, and requested a leave of absence "because he was to appear in court and it was possible that he would have to serve six (6) months in jail." Petitioner stated that he requested leave for the two weeks prior to his court date, and Balzer told him New Process did not grant leave for that reason.

He told her that he faced a potential six-month sentence which could be reduced to three months, to which Balzer replied that New Process would have to discharge him if he would not be working for three months.

¶ 8    According to petitioner, Balzer told him that New Process would allow him to resign over the phone if he discovered he had to serve jail time and could not guarantee him reemployment when he was released. Petitioner asked Balzer if his wife could call on his behalf. Petitioner stated New Process granted six months of leave to Jesse M. (age 40) and Gabriel C. (age 37), who he claimed had both been arrested.[2] He believed Jesse M. might have lied and told New Process he needed medical leave while he served his sentence. Petitioner also listed seven other employees aged 37 to 62 he claimed had been granted leaves of absence by New Process.

¶ 9    Petitioner stated that, on June 7, 2013, he was sentenced to serve 180 days in jail for driving without a drivers' license and began his sentence. The same day, his wife called New Process to advise that he had been sentenced. She did not inform New Process "that he had any intention of resigning since he wanted to retain his employment status with [New Process]." Petitioner claimed that supervisor Nazario Avila told him Balzer wanted to have him fired, but he did not indicate when Avila told him this or why Balzer wanted him fired.

¶ 10    Petitioner told the interviewer that, after serving his jail term, he sent an email to Balzer on September 13, 2013, "indicating that he was ready to return to work" because Balzer had promised to "hold his position" during his jail term. Balzer replied to his email that the company had no work available for him. When petitioner called Balzer and asked why she was not going to give him a job as she promised, she denied promising to give him a job when he was released from jail

_____

[2] For privacy reasons, given the references to these employees' arrests, we use their last initial.

and told him New Process had no job openings. Petitioner then called several departments at New Process to inquire about job openings. He also spoke with human resources associate Linda O'Leary, who told him that she did not know why Balzer claimed the company had no job openings. However, petitioner conceded to the investigator that New Process had no open positions listed on its website. Petitioner expressed knowledge of several employees, ages 45 to 50, who resigned their employment with New Process and were subsequently rehired.

¶ 11    In response, Balzer stated New Process grants leave under the Family and Medical Leave Act (FMLA) for qualifying employees, and it also grants "time off" for military duty and voting. It did not have a policy of granting leave for incarceration. The investigator found New Process's November 22, 2013, leave of absence policy showed New Process allowed leave under FMLA, the "National Defense Authorization Act for FY 2008," and "Military: Uniformed Services Employment and Re-Employment Rights Act, and Military Family Leave," as well as for voting, jury duty, and bereavement. Balzer stated the policy was in New Process's handbook, and the investigator found petitioner signed an "employee manual receipt" on May 8, 2006.

¶ 12    Balzer stated New Process required all employees who would not be available to work for non-medical reasons to resign their employment and reapply once they were able to work, and New Process did not guarantee employment to former employees who reapply. Balzer stated that petitioner's employment history was "fair," and he was "not a problem employee." On April 26, 2013, petitioner had received a performance rating of three on a five-point scale and received a pay raise from $15.55 to $15.92 per hour.

¶ 13    Balzer stated that, on May 7, 2013, petitioner spoke with her and told her he was going to be incarcerated on June 7, 2013 because he had accepted a plea bargain for a six-month sentence

which could be reduced to three months. Balzer asked petitioner if he was resigning. He told her he was not because there was a possibility the judge would not approve the plea and just release him. Balzer told petitioner that his absence would be "too long to cover with vacation time," he would need to resign if he wanted "re-hireable status," and she could process the resignation through his wife. Balzer told petitioner he could apply for any jobs New Process had available, but she could not promise him a job. Balzer told the investigator that Jesse M. was not comparable to petitioner because Jesse M. had been on FMLA leave but resigned before he was due to return to work. She had no knowledge that Jesse M. had been in jail or applied for a position.

¶ 14     On June 7, 2013, Balzer received a telephone call from petitioner's wife, who reported that he had been convicted and sentenced to a six-month jail term. On June 10, 2013, Balzer completed a notice of termination for petitioner, indicating he gave notice on May 7, 2013, the termination was voluntary, he was eligible for rehire, and the reason for his resignation was because he had been sentenced to six months in jail. The same day, she mailed petitioner's wife his final paperwork and termination documents via United Postal Service. Balzer stated the documents "were signed for," which show petitioner's wife was in receipt of them. Balzer stated New Process had not planned any discipline for petitioner and had no issues with his performance. Balzer was not familiar with the "alleged comparative information" cited by petitioner because most took place in and before 2005, but stated she had not been approached by any employees requesting leaves of absence for the purpose of serving jail sentences. From September 27, 2012 through March 28, 2013, New Process involuntarily discharged two employees, but the paperwork had no indication of age or arrest record for either.

¶ 15     Balzer stated skilled positions such as petitioner's were typically filled by candidates who applied through job postings on New Process's website, which were also posted on bulletin boards inside its facility. According to Balzer, the last position New Process posted prior to petitioner seeking reemployment was in June 2013, for which an internal candidate was selected in late June 2013.

¶ 16     On September 13, 2013, Balzer received an email from petitioner asking for work, and she checked to determine if New Process had any openings. On September 16, 2013, Balzer replied to petitioner's email and told him New Process did not have any openings at that time. Petitioner called Balzer and asked about coming back to work. She informed him that, while New Process had no openings at that time, he was welcome to continue to inquire about future positions. Petitioner then asked Balzer why she was "going back on her 'promise' to re-employ him." She told him he knew she had not promised him a position, reminded him that she had advised him that resignation only would allow him to remain eligible for rehire, and told him she could not create a position for him.

¶ 17     Balzer later received a phone call from O'Leary who told her that petitioner had been calling various New Process departments directly and telling the managers that Balzer was refusing to hire him because she did not like him. New Process provided emails between petitioner and Balzer corroborating Balzer's account of their email exchange.

¶ 18     The Investigator noted that Department staff sent New Process an information request for various materials from its files, including documentation showing of the ages of its personnel, medical leave provided to its employees from May 2012 to May 2013, documentation of any extended leave for any of the named employees with age and arrest record, and documentation for

each person who resigned due to incarceration or extended absence. New Process never provided the requested information despite numerous follow up requests.

¶ 19    In rebuttal, petitioner conceded that he did not know whether New Process had a policy about giving leave time for the purpose of serving jail sentences. He also conceded that, on June 7, 2013, his wife reported to New Process that he would not be working because of his jail sentence, but maintained that he did not intend to resign. Petitioner denied that New Process sent any paperwork about his discharge to his wife and maintained that his wife did not receive any documentation from New Process at that time. Petitioner could not recall whether Balzer said that New Process could not create a position for him and conceded that, to his knowledge, O'Leary did not have any responsibility for hiring staff.

¶ 20    The investigator recommended the Department find a lack of substantial evidence regarding each of petitioner's claims. The investigator found no evidence that New Process denied petitioner a leave of absence due to either his age or arrest record because its leave policy did not provide for leave for incarceration-related reasons, its denial of petitioner's request for leave appeared consistent with its policy of granting leave of absence for very specific reasons, and petitioner failed to establish New Process held any age- or arrest record-based animus. The investigator found that, although petitioner named numerous comparators who were permitted leaves of absence, he provided no documentary or other evidence corroborating his claims or showing the ages and arrest records of the individuals. Even if New Process had treated Jesse M. more favorably than petitioner, petitioner claimed Jesse M. was over 40 with an arrest record and, therefore, Jesse M. was within both of petitioner's protected categories.

¶ 21    The investigator found no evidence that New Process discharged petitioner because of his age or arrest record. New Process's leave policies provided qualifying employees with leave for medical and military related issues but did not provide for extended leave for incarceration. Although the parties disagreed about whether petitioner was discharged or resigned, they agreed that New Process had informed petitioner he would need to resign before starting his incarceration so that he would be eligible for rehire. If New Process held an animus against petitioner based on his age or arrest record, it would not have advised him "on how to remain re-hirable." Further, petitioner failed to provide any evidence indicating that other personnel were not "discharged" upon incarceration.

¶ 22    The investigator lastly found no evidence that New Process failed to rehire petitioner because of his age or arrest record. Although the parties disagreed about whether Balzer "promised" to hold a position for petitioner while he served his jail sentence, employers were not obligated to hold positions for employees who take leaves of absence other than for medical or military reasons. Even if, as petitioner claimed, New Process rehired certain named employees, some of those alleged rehires were within petitioner's named protected age category, thus negating any age-based animus. Further, petitioner provided no evidence New Process held any animus against petitioner because of his arrest record and, in fact, agreed that New Process had advised him on how to remain eligible for rehire in light of his pending incarceration. Petitioner failed to show that New Process's articulated, non-discriminatory reason for not rehiring petitioner, that it had no open positions at the time, was pretextual or false.

¶ 23    The Department dismissed petitioner's charge.

¶ 24    Petitioner filed a request for review with the Commission. Petitioner, *inter alia*, repeated his allegations regarding his 2013 conversations with Balzer, including the fact that she promised him a job upon completion of his jail sentence. Petitioner repeated his allegations that his fellow employee Jesse M. returned to work with no complications after a long absence. Jesse M. told him he was having jaw surgery which would require him to be absent from work for 6 months, but petitioner did not believe him as Jesse M. had been "fighting" a drunk driving charge and petitioner assumed Jesse M. "would be doing jail time." Petitioner also asserted his supervisor told him in June 2012 that Balzer wanted him to fire petitioner because he had been "calling her to[o] many times after 2 [a.m.]," which petitioner denied doing. Petitioner repeated that he was fired and not rehired because of discrimination due to his age and arrest record, and further claimed "intimidation at work place," "emotional harm," "moral damage," "psichological [*sic*] harm," and "for any other racial or descrimination [*sic*] ads [*sic*]."

¶ 25    The Department responded to petitioner's request for review reiterating the findings from its investigation. It specified that there was no evidence that New Process denied petitioner a leave of absence, discharged him, or refused to rehire him because of his age or arrest record, and petitioner did not show that New Process harbored any age-based or arrest record-based animus against him. Even if petitioner established a prima facie case of age and arrest record discrimination, the Department's investigation did not reveal evidence that New Process's articulated non-discriminatory reason for its actions was pretext for such unlawful discrimination. The Department noted petitioner's request for review did not provide any additional information to warrant a reversal of the Department's original determination, and a review of the record showed the Department conducted a thorough investigation and made findings based upon the evidence.

Further, to the extent petitioner alleged "intimidation" as a harm or race as a basis for discrimination in his request for review, he had not alleged either in his original charge, and therefore the Commission would be unable to consider these new arguments in its review.

¶ 26    On February 28, 2019, after reviewing petitioner's request and the Department's response, the Commission sustained the Department's dismissal of all counts of petitioner's charge for lack of substantial evidence. With regard to the denial of a leave of absence, the Commission found that petitioner established a *prima facie* case of discrimination where New Process failed to provide information about two younger employees who had been granted leaves of absence, so petitioner's assertion that they were treated more favorably than him was uncontested. Nevertheless, New Process articulated a legitimate, nondiscriminatory reason for denying his request, namely that it only allowed leaves of absence for specific reasons not met by petitioner. Additionally, petitioner was given a raise one month before his leave request, which contradicted his claim that New Process wanted to "get rid of him because of his age." Therefore, petitioner did not establish New Process's reason was a pretext for age discrimination.

¶ 27    The Commission further found petitioner's *prima facie* case failed with respect to his alleged discharge because petitioner was unable to identify any similarly situated employee who asked to take a three to six month leave of absence and was not required to resign. It also noted that, even if petitioner established a presumption of discrimination, New Process rebutted it by stating that petitioner could not work because he was incarcerated and thus would have been discharged. New Process allowed petitioner to resign so that he would be eligible for rehire if a position opened in the future and he was available.

¶ 28    The Commission lastly found petitioner could not establish a *prima facie* case regarding New Process's failure to rehire him because New Process had no vacant positions at the time of his release. Further, petitioner acknowledged that Balzer had told him before his incarceration that New Process would not guarantee him reemployment upon his release from jail. The Commission noted that, although petitioner argued Balzer wanted to have him fired in June 2013 and that she had promised to rehire him when he was released from jail, he did not allege any facts which indicated New Process's actions were based on his age or arrest record. Finding no evidence that the dismissal of petitioner's charge was not in accordance with the Act, the Commission sustained the Department's dismissal of the charge.

¶ 29    On March 28, 2019, petitioner filed a *pro* se petition for administrative review of the Commission's decision with this court. In his brief, petitioner argues, *inter alia*, that Balzer "had personal and racial biased [*sic*]" toward him and was often "degrading and condescending" toward him in contrast to her interactions with Caucasian employees. Petitioner claimed New Process had open positions at the time he reapplied, which he knew because he "checked the New Process Steel website" and spoke with O'Leary and other employees who confirmed the company had open positions. Petitioner also argues he never claimed New Process's failure to grant him leave was due to his age and arrest record. He contends that, although he told "Michael Sherman" he believed that he was not rehired due to his age and arrest record, he never told Sherman he was denied a leave of absence due to his age or arrest record. [3] He asserts that, due to this lack of communication, Sherman misunderstood his claim and the Commission favored New Process. We have jurisdiction

---

[3] According to petitioner, Michael Sherman is employed by the State of Illinois and petitioner discussed his case with him. While the record does not reveal any further information regarding this man, the Department's investigator had the initials "MTS." We therefore infer Sherman is the Department investigator who prepared the report in this case.

to review the final order of the Commission pursuant to § 5/8-111(B) of the Act (775 ILCS 5/8-111(B) (West 2014)) and Supreme Court Rule 335 (eff. Oct. 15, 2015).

¶ 30    As an initial matter, we note petitioner's appellate brief does not comply with Illinois Supreme Court Rule 341(h) (eff. May 25, 2018), which governs the content of appellate briefs. For example, petitioner's brief contains no "Points and Authorities" statement outlining the points argued and authorities cited in his Argument (see Rule 341(h)(1)), no statement of jurisdiction (see Rule 341 (h)(4)), and no argument supported by citations to the record or legal authority (see Rule 341(h)(7)). We may strike a brief and dismiss the appeal for failure to comply with the rules. *Marzano v. Dept. of Emp't. Sec.*, 339 Ill. App. 3d 858, 861 (2003). Further, petitioner's failure to present a developed legal argument or support his contentions with legal authority forfeits review of his claims. *In re. Je.A.*, 2019 IL App (1st) 190467, ¶ 57. Nevertheless, it is clear petitioner challenges the Commission's final order and we have the benefit of the Commission's cogent brief. As the issue is evident and the merits of the appeal can be readily ascertained from the short record on appeal, we choose to reach those merits. See *Twardowski v. Holiday Hospitality Franchising, Inc.*, 321 Ill. App. 3d 509, 511 (2011).

¶ 31    It is a civil rights violation under the Act to discharge, refuse to hire, or act with respect to the privileges and conditions of employment on the basis of unlawful discrimination. 775 ILCS 5/2-102(A) (West 2018). Discrimination based upon an individual's age (775 ILCS 5/1-102(A) (West 2018)) or arrest record (775 ILCS 5/2-103(A) (West 2018)) is unlawful under the Act.

¶ 32    Where an aggrieved person brings a charge under the Act, the Department investigates to determine whether the allegations are supported by substantial evidence. 775 ILCS 5/7A-102(C)(1) (West 2018). "Substantial evidence is evidence which a reasonable mind accepts as

sufficient to support a particular conclusion and which consists of more than a mere scintilla but may be somewhat less than a preponderance." 775 ILCS 5/7A-102(D)(2) (West 2018). If the Department determines there is no substantial evidence supporting the charge, the charge is dismissed. 775 ILCS 5/7A-102(D)(3) (West 2018). The charging party may then commence an action for review in the circuit court or, as petitioner did here, file with the Commission a request for review of the dismissal. 775 ILCS 5/7A-102 (D)(3) (West 2018).

¶ 33 A final order of the Commission is judicially reviewed by the Appellate Court under the abuse of discretion standard of review. 775 ILCS 5/8-111(B)(1) (West 2018); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, the court should not disturb the Commission's decision unless it is arbitrary or capricious. *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. *Owens v. Dep't. of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 34 We review the final order of the Commission, not the Department decision. *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-111(B)(2) (West 2018). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and an abuse of discretion will be found where no reasonable person could agree with the position of the lower court. *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 35 In analyzing claims of employment discrimination under the Act, we are guided by federal case law relating to federal anti-discrimination statutes such as Title VII of the Civil Rights Act of

1964. *Zaderaka v. Illinois Human Rights Com'n*, 131 Ill. 2d 172, 178 (1989). Because petitioner has provided no direct evidence of discrimination, we must analyze his claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Zaderaka*, 131 Ill. 2d at 178-79; *Young*, 2012 IL App (1st) 112204, ¶ 34. Under this test, first the petitioner has the burden to show a *prima facie* case of unlawful discrimination by a preponderance of the evidence. *Young*, 2012 IL App (1st) 112204, ¶ 34. If the petitioner establishes a *prima facie* case of discrimination, a rebuttable presumption of unlawful discrimination arises. *Id.*, ¶ 36. In order to rebut the presumption, the respondent must articulate a legitimate, nondiscriminatory reason for its decision. *Id.* If the respondent does so, the burden shifts back to the petitioner to prove the respondent's reason was a pretext for unlawful discrimination. *Id.* The ultimate burden remains with petitioner at all times. *Zaderaka*, 131 Ill. 2d at 179.

¶ 36    To establish a *prima facie* case of employment discrimination under the Act, the employee bears the burden of showing by a preponderance of the evidence that (1) he is a member of a protected class; (2) he was meeting his employer's legitimate business expectations; (3) he suffered an adverse employment action; and (4) the employer treated similarly situated employees outside the class more favorably. *Owens v. Dept of Human Rights*, 403 Ill. App. 3d 899, 919 (2010). At that point, the burden shifts to the employer to articulate, not prove, a legitimate, non-discriminatory reason for the adverse employment decision. *Zaderaka*, 131 Ill. 2d at 179. Finally, if the employer meets its burden, the employee must prove by a preponderance of the evidence that the employer's articulated reason was not legitimate and, in fact, a pretext for unlawful discrimination. *Id.*

¶ 37    For the following reasons, we find the Commission did not abuse its discretion in sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence that petitioner was denied a leave of absence, discharged, and not rehired due to either his age or arrest record.

¶ 38    In his appellate brief, petitioner concedes that New Process did not deny him a leave of absence due to his age or arrest status. He argues that Sherman misunderstood his claim regarding this point, and that he never told Sherman that the denial of a leave of absence was due to his age or arrest record. Because petitioner has conceded this point, we affirm the Commission's order as to the two counts related to New Process's denial of petitioner's leave of absence. See, *e.g.*, *In re I.H.*, 238 Ill. 2d 430, 446 (2010) (affirming the appellate court's judgment regarding points conceded by the State upon review).

¶ 39    We also find that the Commission did not abuse its discretion in finding petitioner failed to establish a *prima facie* case of employment discrimination based on his age or arrest record with respect to the discharge/forced resignation counts where he failed to present evidence that similarly situated employees who were younger or had no arrest records were treated more favorably. Petitioner focused on former employee Jesse M., who he claimed was 40 years old, had been granted a six-month leave of absence ostensibly for medical reasons but was actually serving a jail term, and was not discharged or required to resign by New Process. However, petitioner provided no evidence supporting his speculation regarding Jesse M.'s leave of absence and Balzer informed the Department's investigator that Jesse M. was granted a leave of absence for FMLA, one of the permissible ways an employee may take a leave of absence from New Process and one that did not require the employee to resign or be discharged due to his unavailability to work.

¶ 40 Further, even if petitioner had presented evidence that other, younger or non-arrested employees were discharged or required to resign under similar circumstances, New Process articulated a legitimate, non-discriminatory reason for petitioner's forced resignation. According to New Process's employment policies, any employee who is not available for work for any reason not enumerated in its leave of absence policy must resign and reapply for work once available. As petitioner agrees, he was unavailable to work for six months because he had to serve a jail sentence. This was a non-permissible reason to be unavailable for work, one for which New Process would not grant a leave of absence and would require the employee to resign and reapply once available to work. Petitioner did not present any evidence that New Process was motivated by discrimination rather than adherence to its own policies when it required petitioner to resign in order to be eligible for rehire after serving his jail term. Accordingly, the Commission did not abuse its discretion in affirming the dismissal of the counts related to petitioner's alleged discharge for lack of substantial evidence.

¶ 41 We also find the Commission did not abuse its discretion in finding petitioner failed to establish a *prima facie* case of employment discrimination based on New Process's failure to rehire him after he was released from jail. To establish a *prima facie* case of employment discrimination for failure to hire, a petitioner must show that (1) he is a member of a protected class; (2) he applied and was qualified for the position; (3) he was rejected despite his qualifications; and (4) the position remained open and the employer sought applicants from individuals having petitioner's qualifications. *C.R.M. v. Chief Legal Counsel of Ill. Dept. of Human Rights*, 372 Ill. App. 3d 730, 733 (2007).

¶ 42    Here, the record shows petitioner conceded to the Department's investigator that, when he first spoke with Balzer regarding his request for a leave of absence, she told him that New Process would not guarantee him reemployment when he finished his jail sentence. He also conceded to the investigator that, in September 2013 when he reapplied, New Process had no open positions listed on its website, thus admitting he could not prove the requisite fourth prong of his *prima facie* case.

¶ 43    Nevertheless, petitioner alleges for the first time on appeal and contrary to his concession to the investigator, that New Process did have open positions at the time he reapplied, which he knew because he "checked the New Process Steel website." We do not consider evidence or arguments not raised before the administrative agency. *Deen v. Lustig*, 337 Ill. App. 3d 294, 304, (2003). Further, petitioner provides no documentary evidence whatsoever regarding this claim while Balzer told the investigator that the last position New Process posted prior to when petitioner sought re-employment in September 2013 was in June 2013, with the position filled at the end of the month. The evidence before the Commission showed no job openings at the time petitioner reapplied and the Commission thus did not abuse its discretion in affirming the dismissal of the counts related to New Process's failure to rehire petitioner for lack of substantial evidence.

¶ 44    Lastly, to the extent that petitioner appears to argue that Balzer's actions were motivated by racial animus, we do not consider this claim. Petitioner did not raise a racial claim in his charge before the Department, arguing only discrimination based on his age and arrest record. He did make cursory mention of racial discrimination a year and a half later in his request for review to the Commission, but the Commission did not address it. It would not have had jurisdiction over the new assertion because it was not timely raised in petitioner's charge filed with the Department.

*Kalush v. Illinois Dep't of Human Rights Chief Legal Counsel*, 298 Ill. App. 3d 980, 991 (1998); 775 ILCS 5/7A-102(A) (West 2018) (a charge must be filed within 180 days of the date an alleged civil rights violation has been committed). We, in turn, will not consider any issues on appeal not properly raised during the administrative proceeding. *Illinois Bell Telephone Co. v. Human Rights Comm'n*, 190 Ill App. 3d 1036, 1044-45 (1989).

¶ 45    For the foregoing reasons, the Commission's February 28, 2019, order sustaining the Department's dismissal of petitioner's charge for lack of substantial evidence is affirmed.

¶ 46    Affirmed.