2020 IL App (1st) 191224-U

SECOND DIVISION
May 12, 2020

No. 1-19-1224

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| TRACEY J. ELLIS, | ) | Petition for Direct Administrative |
| | ) | Review of a Decision of the Illinois |
| Petitioner-Appellant, | ) | Human Rights Commission. |
| | ) | |
| v. | ) | |
| | ) | No. 2017 CP 1906 |
| ILLINOIS HUMAN RIGHTS COMMISSION, | ) | |
| ILLINOIS DEPARTMENT OF HUMAN | ) | |
| RIGHTS, and LUXURY GARAGE SALE, | ) | |
| | ) | |
| Respondents-Appellees. | ) | |

_____

PRESIDING JUSTICE FITZGERALD SMITH delivered the judgment of the court.
Justices Pucinski and Coghlan concurred in the judgment.

**ORDER**

*HELD*: The Illinois Human Rights Commission did not abuse its discretion by sustaining the dismissal of petitioner's charge of public accommodation discrimination for lack of substantial evidence.

¶ 1    Petitioner-appellant Tracey J. Ellis (petitioner) appeals *pro se* from a final order entered

by respondent-appellee the Illinois Human Rights Commission (Commission) sustaining

respondent-appellee the Illinois Department of Human Rights' (Department) dismissal of her charge of public accommodation discrimination against respondent Luxury Garage Sale (LGS)[1]. Petitioner alleged that LGS denied her full and equal enjoyment of its services based on her race in violation of section 5-102(A) of the Illinois Human Rights Act (Act) (775 ILCS 5/5-102(A) (West 2016)). The Department dismissed her charge for lack of substantial evidence. Petitioner sought review from the Commission, which sustained the Department's decision. She now appeals, contending that the Commission abused its discretion in sustaining the dismissal of her cause. She asks that we reverse the order entered by the Commission and that we "order her financial settlement, and reimbursement of her filing fee, and any other expenses, such as photocopy and coil binding costs." For the following reasons, we affirm.

¶ 2                                    BACKGROUND

¶ 3        LGS is a luxury consignment shop which sells items online via consignment and maintains a physical store location on Michigan Avenue in Chicago.

¶ 4        In March 2017, petitioner filed a public accommodation discrimination charge with the Department alleging that LGS denied her the full and equal enjoyment of its services because of her race, which she described as "black." In her petition, she averred that on January 24, 2017, she took her new, never-used designer handbag to LGS' Michigan Avenue store in order to sell it. Petitioner claimed she spoke to LGS employee Rachel Rand, who is white, and that Rand examined the handbag and gave her a receipt, telling her it would be listed as "NWT" (new with tags) and that the listing would appear online within a couple weeks. Petitioner stated that she waited two weeks and repeatedly checked the website but her bag

_____

[1] LGS did not file a brief in this appeal.

was not listed. She eventually saw the listing about a month later, describing the bag as "pre-owned." She averred that she called LGS and spoke on the phone to its vice president of client relations, Margaret LeFevour, who is also white. Petitioner claimed that LeFevour told her she would correct the listing and mark the bag as new. After a week, the listing had not been changed, and petitioner called LeFevour again and told her that because LGS did not correct the information, she would come to the store to pick up her bag. Petitioner did so a few days later and LGS returned the bag to her. In her filing, petitioner claimed she was denied full public accommodation and insisted that, while she admittedly did not see any black customers at the store when she was there, she believed she was the only black customer treated this way and that LGS treated similarly situated non-black customers differently under similar circumstances.

¶ 5        Based on her petition, the Department conducted an investigation, interviewed Rand and LeFevour, and obtained the following evidence from LGS. Rand stated that she never met petitioner in person and was not in the store when petitioner was there. Rather, petitioner's handbag was taken in at the LGS store by employee Rachel Grayem. Rand communicated with petitioner only via telephone and email. She first spoke to petitioner in January 2017, when petitioner called to initially inquire about the consignment process. She then communicated with her again in February 2017 via phone and email regarding her complaints about the listing. In these conversations, Rand explained to her that the bag could not be listed as new and had to be listed as pre-owned because petitioner had owned the bag, even though she may not have used it. When petitioner told Rand she wanted her bag back, Rand told her that, pursuant to the consignment agreement she had signed, LGS charges a $15.00 fee for the early return of an item; however, Rand informed petitioner LGS would

waive the fee for her and agreed to return the bag without any charge. Rand confirmed that petitioner's handbag was so returned. Rand stated that, as she never met petitioner in person, she was unaware of her race.

¶ 6        Like Rand, LeFevour stated that she never met petitioner in person, but only spoke to her on the phone. She described that the listing process can take approximately 14 to 21 days, and that when she received a call from petitioner that her listing was taking too long to post, LeFevour told her she would try to process it quickly. LeFevour verified that petitioner's bag was listed on February 16, 2017 (about three weeks after intake), and that it was designated as "Pre-owned" and described as "Light creasing and light transfer marks throughout patent textile. Light oxidation and surface scratches on hardware. Tarnish on front magnetic closure." When petitioner called her again, this time to complain that the bag was not listed as new, LeFevour explained that the bag received the "pre-owned" description because, even if she never used it, she owned it. LeFevour agreed to remove the "pre-owned" description but told petitioner she could not list the bag as "new" because eBay guidelines prohibited the listing of any previously owned item as such, even if it was never used. LeFevour stated that she was entirely unaware of petitioner's race and verified that every item, regardless of who brings it to LGS for sale or that person's race, goes through the same processing procedure as did petitioner's handbag.

¶ 7        LGS provided the Department with copies of its email correspondence with petitioner, as well as a copy of its general consignment agreement, which petitioner agreed to when she brought in her handbag. The agreement states that the consigner gives LGS the right to list an item and provide a description of it as it sees fit. It also makes clear that a consigner who wants items returned prior to 180 days after intake will incur a $15.00 per-item fee.

¶ 8        Upon the close of its investigation, the Department concluded there was no evidence that LGS denied petitioner the full and equal enjoyment of its services, nor that it did so based on her race. It noted that, in contrast, the evidence showed LGS processed petitioner's handbag, posted it for sale online, and returned it upon her request without charging her the early return fee—things it would not have done had it sought to deny the full and equal enjoyment of its services to her. It also noted that Rand and LeFevour did not have any knowledge of petitioner's race, as they never dealt with her in person. Accordingly, the Department recommended a finding of lack of substantial evidence and dismissed petitioner's charge, as "[t]here is no evidence of a race based animus" and "no evidence that any non-black individual was treated more favorably under similar circumstances."

¶ 9        Petitioner filed a request for review of the Department's decision with the Commission, arguing that LGS "continuously violated her rights to be served respectfully in accordance to the Public Accommodation law, based on her race and color." She included allegations that Rand "showed her racism upfront" by initially incorrectly processing her application to list the bag while she was in the store and having to process her information twice, and that LGS "showed their racist jealous behavior" by ignoring her requests to change the listing, which she insisted was "false" and "showed complete racism." She further stated that LGS employees "resent[] the fact that [she] is a first class american black of half white english descent" with "better american english communication skills," that LGS "is lying" about its listing policies and the evidence it provided the Department, and that its employees were liars, as well.

¶ 10        The Department responded that its investigation showed LGS did not deny petitioner full and equal enjoyment of its services because of her race and that LGS demonstrated it listed

the handbag petitioner gave it on consignment as "pre-owned" because that description was accurate. It also noted that petitioner signed the consignment agreement, which gives LGS the sole discretion to list the item's condition, age, type, etc., and that LGS returned the bag upon petitioner's request, waiving the otherwise applicable early return fee. Without evidence that LGS did not reasonably and in good faith describe minor flaws in the handbag, and without evidence that LGS described the merchandise of a customer whose race is non-black as "new" under similar circumstances, the Department argued that petitioner's charge could not stand.

¶ 11 Petitioner filed a reply, arguing that she "was purposely refused ethical service" by LGS and that it "mistreated" her. In addition to reasserting her claims of jealousy on the part of LGS employees, petitioner again insisted that LGS' failure to list her bag per her request was "direct evidence of race discrimination" and this violated the public accommodation law.

¶ 12 After discussing the required elements for a public accommodation charge and the evidence presented herein, the Commission issued its final administrative decision finding that the Department properly dismissed petitioner's claim for lack of substantial evidence. First, the Commission noted that it was not clear from the evidence that LGS actually denied petitioner access to its services, since, in contrast, the evidence showed LGS listed petitioner's handbag as it customarily would, "albeit not with the description [petitioner] desired." Second, the Commission reasoned that, even if this could somehow be construed as a denial of services (which it was not), petitioner offered no evidence that her race was a factor nor could she point to any comparators who brought similar items to LGS and were treated differently. Accordingly, the Commission concluded that petitioner did not present

enough evidence to show that the Department's dismissal of her charge was not in accordance with the Act.

¶ 13                                           ANALYSIS

¶ 14      As a threshold matter, we note that compliance with Illinois Supreme Court Rule (Rule) 341(h) (eff. May 25, 2018) is mandatory, and a party's status as a *pro se* litigant does not relieve her of her noncompliance with appellate practice rules. See *Voris v. Voris*, 2011 IL App (1st) 103814, ¶ 8 (compliance with rules governing briefs on appeal is compulsory regardless of a party's status); accord *Ryan v. Katz*, 234 Ill. App. 3d 536, 537 (1992); see also *In re Marriage of Hluska*, 2011 IL App (1st) 092636, ¶ 57 (our supreme court rules, including Rule 341, are not merely advisory suggestions; rather, they are required to be followed). Consequently, where an appellant's brief contains numerous Rule 341 violations and, in particular, impedes our review of the case at hand because of them, it is our right to strike that brief and dismiss the appeal. See *In re Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (citing *Kic v. Bianucci*, 2011 IL App (1st) 100622, ¶ 23 (failure to follow Rule 341 may result in forfeiture of consideration of issues on appeal)); see also *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (quoting *Kic*, 2011 IL App (1st) 100622, ¶ 23 (quoting *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719 (1986)) (ultimately, we are " ' "not a depository in which the appellant may dump the burden of argument and research" ' " for her cause on appeal).

¶ 15      In the instant cause, petitioner's brief does not comply with Rule 341(h) in several important respects. That is, save for a general citation to the Act, petitioner's brief does not contain any "Points and Authorities" statement outlining the points argued and authorities cited in the Argument (see Rule 341(h)(1)); it does not contain a viable statement of

jurisdiction (see Rule 341(h)(4)); and, while she does provide scant citation to a few pages of the record, petitioner provides essentially no argument, let alone any citation to legal authority for such (see Rule 341(h)(7)). Thus, it is within our prerogative to strike her brief and dismiss this appeal based on her failure to comply with the applicable rules of appellate procedure. See *Holzrichter v. Yorath*, 2013 IL App (1st) 110287, ¶ 80; accord *Marriage of Petrik*, 2012 IL App (2d) 110495, ¶ 38 (the reviewing court has every right to strike a plaintiff's appellate brief and dismiss her cause when Rule 341 is violated so as to impede review). However, we note that, because we have the benefit here of a cogent brief from respondent the Commission, we choose, in our discretion, to reach the merits of the appeal. See *North Community Bank v. 17011 South Park Ave., LLC*, 2015 IL App (1st) 133672, ¶ 14 (reviewing merits of the appeal despite appellant's numerous violations of Supreme Court Rule 341(h)).

¶ 16    Under the Act, it is "a civil rights violation for any person on the basis of unlawful discrimination to * * * [d]eny or refuse to another the full and equal enjoyment of the facilities, goods, and services of any public place of accommodation." 775 ILCS 5/5-102(A) (West 2016). "Unlawful discrimination" is defined in part as discrimination against a person because of her race or skin color. 775 ILCS 5/1-103(Q) (West 2016).

¶ 17    Where a petitioner brings a charge under the Act, the Department shall conduct an investigation to determine whether the allegations are supported by substantial evidence. See 775 ILCS 5/7A-102(C)(1) (West 2016). "Substantial evidence is evidence which a reasonable mind accepts as sufficient to support a particular conclusion and which consists of more than a mere scintilla" of proof. 775 ILCS 5/7A-102(D)(2) (West 2016). If the Department determines there is no substantial evidence supporting the charge, it shall dismiss

the charge. See 775 ILCS 5/7A-102(D)(3) (West 2016). The petitioner may then either commence a civil action in circuit court or, as petitioner did here, file a request for review of the dismissal with the Commission. 775 ILCS 5/7A-102(D)(3) (West 2016).

¶ 18 A final order of the Commission may be judicially reviewed by our Court under the abuse of discretion standard of review. See 775 ILCS 5/8-111(B)(1) (West 2016); *Young v. Illinois Human Rights Comm'n*, 2012 IL App (1st) 112204, ¶ 32. Under this standard, we will not disturb the Commission's decision unless it is arbitrary or capricious. See *Young*, 2012 IL App (1st) 112204, ¶ 33. A decision is arbitrary or capricious if it contravenes the legislature's intent, fails to consider a crucial aspect of the problem, or offers an impossible explanation contrary to agency expertise. See *Owens v. Dep't of Human Rights*, 403 Ill. App. 3d 899, 917 (2010).

¶ 19 We review the final order of the Commission, not the Department's decision. See *Zaderaka v. Illinois Human Rights Comm'n*, 131 Ill. 2d 172, 180 (1989). The Commission's findings of fact "shall be sustained unless the court determines that such findings are contrary to the manifest weight of the evidence." 775 ILCS 5/8-11(B)(2) (West 2016). This deference to the Commission's findings of fact is particularly true of the credibility determinations it makes. See *Zaderaka*, 131 Ill. 2d at 180; accord *Folbert v. Dep't of Human Rights*, 303 Ill. App. 3d 13, 25 (1999). A reviewing court may not reweigh the evidence or substitute its judgment for that of the Commission, and abuse of discretion will be found only where no reasonable person could agree with the decision rendered. See *Young*, 2012 IL App (1st) 112204, ¶ 33.

¶ 20 In analyzing claims of public accommodation discrimination under the Act, we are guided by federal case law relating to analogous federal anti-discrimination statutes, here,

Title II of the Civil Rights Act of 1964, which in relevant part protects an individual's "full and equal enjoyment" of services and facilities of any place of public accommodation without discrimination on the ground of race or color (42 U.S.C. § 2000a (2000)). See *Zaderaka*, 131 Ill. 2d at 178 (analyzing an employment discrimination action using federal case law addressing claims under Title VII of the Civil Rights Act of 1964); accord *Owens*, 403 Ill. App. 3d at 918.

¶ 21    Because petitioner in the instant cause has provided no direct evidence of discrimination, we must analyze her claim using the three-part test set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). See *Zaderaka*, 131 Ill. 2d at 178-79 (our state courts have adopted this analytical framework as set forth by the United States Supreme Court decisions addressing such claims); *Young*, 2012 IL App (1st) 112204, ¶ 34. Under this test, first, petitioner has the burden to establish a *prima facie* case of unlawful discrimination by a preponderance of the evidence. See *Young*, 2012 IL App (1st) 112204, ¶ 34; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 178-79. If she meets this burden, a rebuttable presumption of unlawful discrimination arises. See *Young*, 2012 IL App (1st) 112204, ¶ 36; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 179. Second, to rebut this presumption, respondent LGS must articulate a legitimate, nondiscriminatory reason for its decision. See *Young*, 2012 IL App (1st) 112204, ¶ 36; see, *e.g.*, *Zaderaka*, 131 Ill. 2d at 179 (respondent need only articulate such a reason and is not required to prove it). Third, if LGS does so, the presumption of unlawful discrimination falls and the burden shifts back to petitioner to prove by a preponderance of the evidence that LGS' articulated reason was untrue and merely a pretext for discrimination. See *Young*, 2012 IL App (1st) 112204, ¶ 34; see, *e.g.*, *Zaderaka*, 131 Ill.

2d at 179.  Under this test, the ultimate burden remains with petitioner at all times.  See

*Zaderaka*, 131 Ill. 2d at 179; accord *Owens*, 403 Ill. App. 3d at 919.

¶ 22    With respect to the first part of the *McDonnell* test, to establish a *prima facie* case for

public accommodation discrimination, petitioner here must show she: (1) is a member of a

protected class; (2) attempted to exercise her right to full benefits and enjoyment of LGS'

services; (3) was denied those benefits and enjoyment; and (4) was treated less favorably

than similarly situated persons outside her protected class.  See *McCoy v. Homestead Studios

Hotels*, 390 F. Supp. 2d 577, 583-85 (S.D. Tex. 2005).

¶ 23    We hold that the Commission did not abuse its discretion in finding petitioner failed to

establish a *prima facie* case of public accommodation discrimination based on her race.  The

parties do not dispute that LGS is a public place of accommodation under the Act and that

petitioner was a member of a protected class due to her race.  However, petitioner failed to

present any evidence with respect to the last two elements required to establish a *prima facie*

case, namely, that she was denied full and equal enjoyment of LGS' services or that she was

treated less favorably than similarly situated LGS patrons outside her protected class.

¶ 24     First, the evidence presented in this cause clearly shows, contrary to petitioner's

insistence, that she was not denied full and equal enjoyment of LGS' services.  Petitioner

went to LGS' Michigan Avenue store location to sell a handbag she owned via consignment.

LGS accepted her handbag and listed it on eBay in accordance with its general consignment

agreement.  Petitioner claims she was denied full enjoyment of services because LGS took

too long to list her bag online and because LGS did not list her bag as "NWT (new with

tags)."  However, petitioner's claim cannot stand, for various reasons.  With respect to the

listing's timing, petitioner insists that Rand told her upon intake that her bag would be listed

online in a couple weeks but that it took over a month. Yet, upon investigation, the evidence showed that petitioner never spoke to Rand upon intake. Moreover, LeFevour stated that when petitioner contacted her about the supposed delay, she explained that the listing process can take anywhere between approximately 14 and 21 days, and that petitioner's bag was listed on February 16, 2017, just about three weeks after intake, which occurred on January 24, 2017.

¶ 25    Additionally, with respect to the listing itself, petitioner signed LGS' general consignment agreement when she agreed to sell the bag. Again, this agreement provides that LGS has full discretion with respect to processing, inspecting and authenticating any item prior to listing it online, and LGS controls how an item is described. Both Rand and LeFevour stated during the Department's investigation they explained to petitioner that, pursuant to eBay's protocol, they were not permitted to list her handbag as NWT even though she never used it due to the mere fact that she owned it; an item previously owned by someone (not a merchant) must be listed as "pre-owned" even if it has never been used. Furthermore, the investigation revealed that, even though she could not list the bag as "new," LeFevour eventually was able to remove the "pre-owned" description from the listing in an attempt to appease petitioner's dissatisfaction. And, significantly, the moment petitioner decided she wanted her handbag back and the listing cancelled, LGS accommodated her immediately, not only returning the bag within mere days, but doing so without charging her the otherwise applicable $15.00 early return fee petitioner herself agreed to pay when she consigned the bag in the first place. Clearly, these are things LGS would not have done had it sought to deny her full and equal enjoyment of its services.

¶ 26       Petitioner also failed to present any evidence with respect to the element of similarly situated customers outside her protected class being treated differently by LGS. Petitioner presented no evidence showing that other customers of a different race consigned a pre-owned item with LGS and that the item was posted online more quickly than petitioner's handbag or was listed as "new" when it was not. Rather, in direct contradistinction, as we have just described, the evidence shows petitioner was, in fact, treated more favorably than other customers, as LGS agreed to waive the early return fee it charges customers requesting their consigned item be returned within 180 days of its intake. From all this, it is obvious that petitioner failed to meet her burden of establishing a *prima facie* case of unlawful public accommodation discrimination based on her race by a preponderance of the evidence, and the Commission properly dismissed her cause.

¶ 27       Even if it could somehow be concluded that petitioner did meet her burden of establishing a *prima facie* case (which it cannot), and, thus, a rebuttable presumption of unlawful discrimination can be said to have arisen here (which it did not), we note for the record that LGS articulated a legitimate, nondiscriminatory reason for its actions. As we have already described, LGS employees Rand and LeFevour, who never spoke with petitioner in person and never knew her race, explained to petitioner both the approximate length of time for the listing process and the appropriate terms they were permitted to use to described her pre-owned item. Petitioner's handbag was listed online within 23 days from intake, not over a month as she described. And, it was to be listed as pre-owned, even if never used, because petitioner, who is not the handbag merchant, owned it. This description--which LGS controls via the general consignment agreement to which petitioner agreed, as

well as online protocol--was appropriate because it was true. LGS' actions, therefore, were legitimate and nondiscriminatory.

¶ 28        Continuing along these hypothetical lines, assuming petitioner established a *prima facie* case, and with LGS then having articulated a reason for its actions, any presumption of unlawful discrimination would fall here and the burden would shift back to petition to prove, by a preponderance of the evidence, that LGS' reason was a pretext for discrimination. Just as with the other required elements of her cause, this, she cannot do. She provides absolutely no evidence of a pretext for discrimination here by LGS against her, other than her wild speculation. See *Folbert*, 303 Ill. App. 3d at 25 ("[a] petitioner's discrimination charge consisting of mere speculation and conjecture does not constitute substantial evidence"). Again, neither Rand nor LeFevour ever met petitioner in person, and the investigation concluded that they were entirely unaware of her race. Even if they knew of her race, and even if LGS set out to treat petitioner less favorably than other customers because of her race, it is wholly unlikely that they would have made the effort to change the listing to remove the "pre-owned" description of her handbag to appease her dissatisfaction and even more unlikely that they would have waived the early return fee she contractually agreed to pay when she consigned the handbag in the first place.

¶ 29        Ultimately, the Commission's dismissal of petitioner's charge of public accommodation discrimination for lack of substantial evidence was proper. Petitioner failed to meet the required elements of a *prima facie* case and, even if such a case could be made, LGS provided a non-pretextual reason for its actions which petitioner cannot show was untrue. Having failed to present any substantial evidence to satisfy any of the burdens required of her, the Commission properly dismissed her charge.

¶ 30                                                  CONCLUSION

¶ 31         Accordingly, for the foregoing reasons, we affirm the Commission's order sustaining the

Department's dismissal of petitioner's charge for lack of substantial evidence.

¶ 32         Affirmed.